### STATE OF CONNECTICUT *v.* JOHN ROY
### (12281)

LAVERY, LANDAU and HEIMAN, Js.

Submitted June 5—decision released July 18, 1995

---

*Daniel S. Blinn,* special public defender, for the appellant (defendant).

*Nancy L. Gillespie,* deputy assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *Timothy Liston,* assistant state's attorney, for the appellee (state).

HEIMAN, J. This matter is before us on remand from our Supreme Court. *State* v. *Roy,* 233 Conn. 211, 658 A.2d 566 (1995). The defendant originally appealed to this court from a judgment of conviction, rendered after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103,[1] as a lesser included offense of burglary in the first degree; General Statutes § 53a-101 (a) (1); larceny in the first degree in violation of General Statutes § 53a-122 (a),[2] stealing a

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[2] General Statutes § 53a-122 provides in pertinent part: "(a) A person is guilty of larceny in the first degree when he commits larceny as defined

firearm in violation of General Statutes § 53a-212[3] and conspiracy to commit the crimes with which he was charged in violation of General Statutes § 53a-48.[4]

In his original appeal to us, the defendant asserted that the trial court improperly (1) refused to suppress testimony concerning statements made by him to the police in violation of his *Miranda*[5] rights, (2) denied his motion for judgment of acquittal and (3) convicted him of both larceny and stealing a firearm. *State* v. *Roy*, 34 Conn. App. 751, 753, 643 A.2d 289 (1994), rev'd, 233 Conn. 211, 658 A.2d 566 (1995). We resolved the first and third issues; id., 756–64, 766–72; but declined to afford him review on the second issue on the ground that he had failed to preserve properly his claim concerning the sufficiency of the evidence at trial. Id., 764–66.[6]

Our Supreme Court granted certification limited to the following issue: "Did the Appellate Court properly

in section 53a-119 and . . . (2) the value of the property or service exceeds ten thousand dollars . . . ."

General Statutes § 53a-119 provides in pertinent part: "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ."

[3] General Statutes § 53a-212 (a) provides: "A person is guilty of stealing a firearm when, with intent to deprive another of his firearm or to appropriate the same to himself or a third party, he wrongfully takes, obtains or withholds a firearm, as defined in subdivision (19) of section 53a-3."

General Statutes § 53a-3 (19) provides: " 'Firearm' means any sawed-off shotgun, machine gun, rifle, shotgun, pistol, revolver or other weapon, whether loaded or unloaded from which a shot may be discharged."

[4] General Statutes § 53a-48 (a) provides in pertinent part: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[5] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[6] Furthermore, the defendant failed to seek review of his unpreserved claim pursuant to the guidelines of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

conclude that the defendant was not entitled to review of his challenge to the sufficiency of the evidence for his conviction?" *State* v. *Roy*, 231 Conn. 918, 648 A.2d 166 (1994). The Supreme Court concluded that "[i]n the circumstances of this case," the defendant is entitled to review of his unpreserved claim as to the existence of sufficient evidence to support his conviction. *State* v. *Roy*, supra, 233 Conn. 212. The Supreme Court reversed this court and remanded the case to us with direction to review the merits of the defendant's challenge to the sufficiency of the evidence for his conviction. Id., 213.

We are persuaded that the evidence was more than sufficient to support the conviction of the defendant.

"The jury could reasonably have found the following facts. On the evening of July 13 and the early morning of July 14, 1991, the defendant and Donald Young were riding in Young's truck while contemplating breaking into a gun store in Bristol. The defendant was armed with a nine millimeter pistol and Young carried a .38 caliber revolver. They looked through the windows of a Bristol gun store and noted that no weapons were visible. As a result, they decided to find another store from which to steal guns.

"Both the defendant and Young had earlier observed Teddy's Gun Shop in Haddam (Teddy's) and had concluded that it was possible to break into that gun store because of its poor security. They thus decided, instead of breaking into the Bristol store, to break into Teddy's. At the time that they made this decision, Young was operating his truck on Route 72 in Bristol.

"Teddy's is located in a densely wooded area with sparse population. In the immediate vicinity of the store are an apartment complex, a house and a restaurant. Teddy's is located on the second floor, over the Glockenspiel restaurant. Young parked his truck in the res-

taurant parking lot and he and the defendant walked to the area of the gun shop. At that time, the Glockenspiel restaurant had been closed for about one hour.

"The defendant turned off the power to the building. When the power was shut off, the defendant and Young climbed a ladder that they had placed on the west side of the building. They went to a window that was equipped with an alarm pressure switch and the defendant kicked the switch to bend it so that it would not pop up and activate the alarm. They broke the window, pushed up the window latch and the defendant entered the premises. Young waited outside observing the area in case a silent alarm had been activated.

"Young followed the defendant into Teddy's through the window and they proceeded to load guns into gun cases. The defendant and Young remained in Teddy's for about three hours. Before placing the guns in the cases, the defendant sprayed the guns with a very light oil to prevent rusting. In addition, they placed a .44 magnum, two .45 caliber, two nine millimeter and two .380 caliber guns in a small duffle bag for removal. The defendant and Young also took ammunition, holsters, magazines, several aimpoint laser scopes and a silencer. Young also removed about $100 from the cash register, which he later divided with the defendant.

"The boxes containing the stolen property were placed in Young's truck and transported to the Cenacle property in Middletown. The property is the site of an abandoned convent with wooded trails and several buildings in various states of disrepair. The defendant and Young took the boxes that contained some of the items removed from Teddy's and stored them in an underground concrete structure that the defendant referred to as the 'Witch Cabin.' The structure had a heavy steel door over the top. The defendant took the stainless steel nine millimeter Baretta and the .380 cal-

iber Baretta, and Young took the .22 caliber Baretta and the .38 caliber Smith and Wesson. They stored the remaining weapons and paraphernalia in the underground structure, covered the steel door with dirt and leaves, and left the area.

"On July 16, 1991, Young and Ronald Pollack visited the underground structure and Young showed Pollack the weapons and other items that had been taken from Teddy's. While they were at the structure, they shot one of the nine millimeter weapons. Young removed several of the weapons including a nine millimeter Luger with a silencer attached, a .45 caliber, a .22 caliber, a .380 caliber and another nine millimeter weapon. Young also attempted to file serial numbers from several of the weapons. Young and Pollack then traveled to East Hartford. Pollack was operating a vehicle with Young as the passenger. The vehicle was stopped by the East Hartford police and both Young and Pollack were arrested. When the police stopped the vehicle, Young placed the weapons that he had removed from the cache onto the floor of the vehicle. The East Hartford police took the weapons into possession, identified them as having been taken in the burglary at Teddy's and notified the state police.

"On July 17, 1991, Young was interviewed by two Connecticut state police officers. During that discussion, Young told the police officers about the burglary. Pollack also spoke with the state police and directed the police to the underground structure where the weapons had been concealed by the defendant and Young. On July 17, 1991, the defendant was arrested pursuant to a warrant." *State* v. *Roy,* supra, 34 Conn. App. 753–56.

Subsequent to his arrest, the defendant was interviewed by Detective Marsha Youngquist and Detective

Patrick Gaffney of the Connecticut state police.[7] During the course of the interview, Youngquist stated to the defendant that she knew that he and Young had committed the burglary at Teddy's. In response to this statement, the defendant nodded his head and said, "Yes."[8] Furthermore, Youngquist asked the defendant what he and Young had taken from Teddy's, and the defendant responded, "A lot of guns." The defendant also told Youngquist that it was Young's idea to break into the gun shop, and that they had used Young's pickup truck to drive to the gun shop. Finally, the defendant accurately identified the date and time period during which the burglary had occurred.

The defendant's attack on the sufficiency of the evidence is premised on his claim that the evidence produced by the state failed to establish that the defendant was present at the scene of the crime. The defendant posits as his basis for this claim a three pronged argument: (1) that the only evidence offered by the state to support the claim that the defendant was present at the scene of the crime was the testimony of Young and Youngquist, (2) that the defendant's response of "Yes" to Youngquist's statement that she knew that he and Young had broken into Teddy's was vague and ambiguous, and that the other statements made by the defendant to Youngquist "fail[ed] to address the elements of the crimes [with] which he was charged," and (3) that no reasonable jury could have believed the testimony of Young. We are not persuaded.

[7] We have already concluded that the statements made by the defendant while in custody were properly admitted into evidence and that the defendant had knowingly, intelligently and voluntarily waived his constitutional rights under *Miranda. State v. Roy*, supra, 34 Conn. App. 756–64. This issue was not a part of the grant of certification by our Supreme Court. *State v. Roy*, supra, 231 Conn. 918.

[8] The trial transcript reveals that Youngquist testified as follows concerning her interview with the defendant:

"I said to [the defendant] I know you [and Young] broke in, and he responded yes, and he nodded his head. . . ."

We employ a two part analysis in reviewing the sufficiency of the evidence to sustain a criminal conviction. *State* v. *Salz,* 226 Conn. 20, 31, 627 A.2d 862 (1993). "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct." (Citations omitted; internal quotation marks omitted.) Id.

Our review of the evidence in the light most favorable to sustaining the verdict satisfies us that the jury reasonably could have concluded that the defendant was present at the scene of the crime on the evening in question, and that he actively participated in carrying out the crimes for which he stands convicted.

"The issue of the identification of the accused as the perpetrator of the crime is peculiarly one of fact to be resolved by the jury. *State* v. *Smith,* 138 Conn. 196, 201, 82 A.2d 816 (1951). 'If evidence, whether direct or circumstantial, should convince a jury beyond a reasonable doubt that an accused is guilty, that is all that is required for a conviction.' Id., 200." *State* v. *Rivera,* 32 Conn. App. 193, 201–202, 628 A.2d 996, cert. denied, 227 Conn. 920, 632 A.2d 698 (1993).

In determining whether the defendant is guilty, "[i]t is the sole right of the jury as the trier of the facts to draw all reasonable and logical inferences from the facts as it finds them to exist." *State* v. *Reddick,* 33 Conn. App. 311, 332, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994), citing *State* v. *Gray,* 221 Conn. 713, 721, 607 A.2d 391, cert. denied, 506

U.S. 872, 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992); *State v. Rivera*, supra, 32 Conn. App. 201.

"It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses." *State* v. *Reddick*, supra, 33 Conn. App. 333, citing *State* v. *Pinnock*, 220 Conn. 765, 778–79, 601 A.2d 521 (1992); *State* v. *Rivera*, supra, 32 Conn. App. 201.

Furthermore, in considering the evidence introduced in a case, "[j]uries are not required to leave common sense at the courtroom door"; *State* v. *Maxwell*, 29 Conn. App. 704, 710, 618 A.2d 43 (1992), cert. denied, 225 Conn. 904, 621 A.2d 287, cert. denied, 509 U.S. 930, 113 S. Ct. 3057, 125 L. Ed. 2d 740 (1993), citing *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985); nor are they "expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *State* v. *Little*, 194 Conn. 665, 674, 485 A.2d 913 (1984).

From the facts established and the reasonable inferences to be drawn therefrom, it was reasonable for the jury to have found the defendant guilty. The jury heard testimony from two witnesses from which it could reasonably have concluded that the defendant was guilty. The jury heard Youngquist testify that (1) the defendant affirmatively responded to Youngquist's statement that she knew the defendant and Young had committed the burglary at Teddy's, (2) the defendant admitted that he and Young had taken "[a] lot of guns" from Teddy's, (3) the defendant admitted that he and Young had used Young's pickup truck to drive to the gun shop, and

(4) the defendant accurately identified the date and time of the burglary.[9]

The jury also had before it the unequivocal testimony of Young that the defendant was an active participant in the crimes with which he stood charged. The jury had the opportunity to judge the credibility of Young on the bases of his testimony and a comparison of that testimony with the admissions made by the defendant, some of which constituted circumstantial evidence of his participation in the crimes. "[W]e rely on the good sense and judgment of American juries to weigh evidence with some element of untrustworthiness since such evidence is customary grist for the jury mill." (Internal quotation marks omitted.) *State* v. *Reddick*, supra, 33 Conn. App. 334, quoting *State* v. *Fullwood*, 193 Conn. 238, 254, 476 A.2d 550 (1984).

The defendant's claim that the evidence was insufficient to identify him as having been present at and a

---

[9] The trial transcript reveals the following dialogue concerning Youngquist's interview with the defendant:

"[Prosecutor:] Could you tell us the best you recall the questions you asked and the answers Mr. Roy gave in connection with the Teddy's Gun Shop case?

"[Youngquist:] Yes. I told him that Donald Young had been arrested, and he was aware of that because he had seen the news of it. I told him that we had gotten the guns back, and I asked him to tell me his version of what happened. . . . He told me he had known Donald for sometime and that they had done a lot together and that it was Donald's idea to break into the gun shop. He said they used Donald's blue pickup to drive down to the gun shop, and Donald knew the area because his grandfather used to have a barber shop there. And he acknowledged being in the shop. He acknowledged—

"Q. [Interposing] How did that come about? Specifically, do you recall what questions, answers or what happened?

"A. I said to him that I know you two broke in, and he responded yes, and he nodded his head. And I asked him what—what did you get? And he said: 'A lot of guns.'

"Q. Did he give you the time frame or did you ask him anything about a time frame?

"A. Yes, I did, and he said that it was late Saturday into early Sunday."

participant in the crime is without merit. "The defendant in the present case has not met his burden on appeal of establishing that there was insufficient evidence from which a reasonable jury could have found each essential element of the crime charged beyond a reasonable doubt." *State* v. *Salz,* supra, 226 Conn. 31.

The judgment is affirmed.

In this opinion the other judges concurred.