## STATE OF CONNECTICUT *v.* JONATHAN WILD
## (15093)

Lavery, Heiman and Hennessy, Js.

Argued September 20—officially released October 29, 1996

*Richard T. Miller*, with whom was *John F. Cocheo*, for the appellant (defendant).

*Lisa Herskowitz*, deputy assistant state's attorney, with whom, on the brief, were *Kevin Kane*, state's attorney, and *Theresa Ferryman*, deputy assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of sexual assault in the fourth degree in violation of General Statutes § 53a-73a,[1] and risk of injury to a child in violation of General Statutes § 53-21.[2] On appeal, the defendant asserts that the trial court (1) improperly admitted evidence of prior misconduct as relevant to the issue of proof of the defendant's intent, and (2) failed to give limiting jury instructions at the time the constancy of accusation witnesses testified. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. The victim is the defendant's daughter. The defendant and the victim's mother were divorced on December 6, 1991. Following the divorce, the victim and her younger sister visited with the defendant at his home every other weekend. During these visits, the victim usually slept in a guest bedroom while the defendant slept in another room.

During a weekend visit in June, 1993, the victim, who was seven years old at the time, slept in the defendant's

---

[1] General Statutes § 53a-73a provides in pertinent part: "(a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

[2] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

bed because other relatives were also visiting and were staying in the guest bedroom. While the defendant was in bed with her, he unzipped the victim's pajamas, put his hand under her underpants, and touched her vaginal area. The victim was frightened and hid under the bed.

The victim did not tell anyone about the incident at that time. During the fall of 1993, a police officer spoke at the victim's school about improper touching. Subsequently, in January, 1994, the victim told her mother about the June, 1993 incident. The victim also talked about the incident with Trooper Todd Lynch of the Connecticut state police and Elizabeth LaChapelle, a clinical psychologist.

Lynch investigated the victim's complaint and took statements from the defendant on January 18 and January 31, 1994. In those two signed statements, the defendant admitted to spending the night in the same bed with his daughter, but claimed he could not remember unzipping her pajamas or touching her vaginal area. He did recall, however, waking up in the morning with his hand on his daughter's stomach. The defendant disclosed that he had suffered an epileptic seizure in 1991. He was subsequently arrested and charged with sexual assault for behavior that occurred during the seizure. The defendant suggested that it was possible that he had experienced a seizure that night in June, 1993, and had touched his daughter during the seizure. The defendant was arrested on March 4, 1994.

At trial, the victim testified as to the June, 1993 incident. The victim's mother, Lynch and LaChapelle testified as to, among other things, what the victim had told them regarding the June, 1993 incident. Rose Niedzwicki, a clinical psychologist, testified as an expert on child sexual assault victims. S, a young girl who formerly babysat for the defendant's children, testified to

an incident in 1991 when the defendant touched her vaginal area.

The defendant and his sister, Nancy Davis, testified in his defense. The defendant admitted to having slept in the same bed with the victim in June, 1993, but asserted that the only time he touched his daughter that night was when she repeatedly rolled over onto his right arm,[3] and he had to push her away. The defendant's sister testified that she was at the defendant's home that same weekend in June, 1993, and she did not notice anything unusual. The jury found the defendant guilty as charged, and this appeal follows.

I

The defendant first asserts that the trial court improperly admitted into evidence an act of prior misconduct as relevant to the issue of the defendant's intent. We disagree.

The following additional facts are necessary to resolve this issue. On July 5, 1995, the trial court held a hearing outside the presence of the jury to determine whether it should permit the state to introduce evidence of prior sexual misconduct committed by the defendant.

During the hearing, the state presented the testimony of S, the victim of the defendant's prior misconduct. S testified that she knew the defendant and formerly babysat for the victim and her younger sister. Sometime in 1991, S went to the defendant's house to visit with his family. The defendant told S that the victim and her mother were not at home but would be back shortly. S went into the defendant's house to wait for the others to return. She was sitting on the floor of the living room, playing with the victim's sister when the defendant began touching her back. S stood up and took the vic-

---

[3] The defendant had recently had surgery on his right arm, which was sore and in a sling.

tim's sister out to the front porch. The defendant followed them and touched S on the chest and vaginal areas. S tried to fight off the defendant, then walked off of the front porch and onto the grass. The defendant followed, got down on the grass, crawled between S's legs and pushed her up on his shoulders. The defendant put S down and she went home. S was fourteen years old at the time of the incident, weighed between eighty-five and ninety pounds, and was not very physically developed.

The state argued that S's testimony was admissible to prove the defendant's intent in touching the victim as well as the defendant's common scheme to molest young girls sexually. The state noted that the defendant's two written statements to the police, which had been admitted into evidence, did not deny that something had happened with the victim in 1993, but suggested that the defendant may have had an epileptic seizure and been unaware of what he was doing. The state argued that these statements brought the element of intent into question. Thus, it argues, the prior misconduct with S was admissible to show that the defendant's touching of the victim's vaginal area was intentional, not inadvertent, and was not behavior of which the defendant was unaware or that he could not control.

The defendant objected to the evidence of the prior misconduct, arguing that the incident with S was too different from the incident with the victim to be admissible. He also argued that admission of the evidence would be extremely prejudicial to the defendant.

The trial court held that S's testimony was not admissible to prove a common scheme, but was admissible to show the defendant's intent. The court noted that the state was required to prove intent with regard to both of the crimes with which the defendant was

charged, and that the defendant's statements to the police had called this element into question.

When the jury returned to the courtroom, the trial court instructed it (1) that the state was required to prove intent with regard to both of the charges against the defendant, (2) that S's testimony was relevant only to the element of intent, and (3) that they could not consider the testimony with regard to any other element. The state then called S as a witness and she testified to the same facts regarding the incident with the defendant that she had related during the hearing. After S's testimony, the trial court gave the jury another limiting instruction. During the charge, the trial court again instructed the jury on the limited purpose of S's testimony.

The law in Connecticut regarding the admission of evidence of prior misconduct is well established. "As a general proposition, evidence of guilt of other crimes, because of its prejudicial nature, is inadmissible to prove that a defendant is guilty of the crimes with which he is charged. . . . Such evidence is admissible for other purposes, however, such as when it is particularly probative in showing such things as intent, an element in the crime, identity, malice, motive or a system of criminal activity, to name some exceptions to the rule. . . . The trial judge, however, must determine in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency." (Citations omitted; internal quotation marks omitted.) *State* v. *Falby*, 187 Conn. 6, 23, 444 A.2d 213 (1982). "Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Jones*, 205 Conn. 638, 660, 534 A.2d 1199 (1987).

The defendant asserts that the prior sexual misconduct evidence was irrelevant to the issue of intent because it was dissimilar as well as remote from the sexual misconduct at issue in this case. Thus, the defendant asserts that the trial court abused its discretion when it determined that the prior sexual misconduct evidence was more probative than prejudicial. We are unpersuaded.

The prior sexual misconduct was very similar to the sexual misconduct at issue in this case. Both of the victims were young, undeveloped girls whom the defendant knew well. In both instances, the defendant touched the victim in the vaginal area, when the defendant was alone with the victim and his younger daughter in an area of the defendant's home.[4] The prior sexual misconduct occurred only two years before the sexual misconduct at issue here.

The trial court conducted a full hearing outside the presence of the jury in which it allowed the defendant to argue extensively against the offer of proof. The trial court also allowed the parties to file written briefs addressed to the issue. After careful consideration of the parties' arguments, the court determined that the probative value of the prior misconduct evidence outweighed its prejudicial tendency. Moreover, the trial court lessened the potential prejudice to the defendant by repeatedly giving the jury limiting instructions. Id., 663. The care with which the trial court weighed the evidence and devised measures for reducing its prejudicial effect militates against a finding of abuse of discretion. See *State* v. *Morowitz*, 200 Conn. 440, 447, 512 A.2d 175 (1986). We conclude that the trial court did

---

[4] The first incident of sexual misconduct occurred when the defendant was alone with S and his younger daughter at his home. The second incident occurred when the defendant was alone with the victim and her sister in an upstairs bedroom of the defendant's home while other family members were elsewhere in the house.

not abuse its discretion in admitting the evidence of prior misconduct as relevant to the issue of the defendant's intent.

II

The defendant next asserts that the trial court's failure to give limiting instructions at the time the constancy of accusation testimony was offered, deprived the defendant of a fair trial. We disagree.

Certain additional facts are necessary to our resolution of this issue. On July 5, 1996, the victim testified about the defendant's June, 1993 touching of her vaginal area. The state then presented the testimony of the victim's mother, Lynch and LaChapelle. All three of these witnesses testified as to what the victim had told each of them regarding the June, 1993 sexual assault. The defendant neither objected to the constancy of accusation testimony nor requested that an instruction be given at the time of the testimony regarding the limited use of such testimony. The court did not give limiting instructions immediately before or after the testimony of these witnesses.

The next morning, during the charge, the trial court instructed the jury that the testimony of the victim's mother, Lynch and LaChapelle had included constancy of accusation evidence. The court further instructed the jury that this evidence could be used only to corroborate the victim's testimony, and that it was not being offered to prove that the June, 1993 incident actually occurred.[5] Defense counsel took no exceptions to the trial court's charge.

---

[5] The trial court instructed the jury as follows: "Also, there is some testimony I'm going to instruct you on shortly, which is called constancy of accusation testimony, and that is when certain witnesses testify what [the victim] told them about the incident in question. When the witness got on the witness stand and said [the victim] told me—whatever [the victim] told them—that's not being offered for the truth of whether or not that occurred, but whether or not [the victim] was constant in her accusation, whether or

The defendant concedes that at the time the constancy of accusation witnesses testified, he did not object, nor did he request that the trial court give limiting instructions. Thus, he claims entitlement to review of this unpreserved claim pursuant to the doctrine of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[6] In support of his claim for *Golding* review, the defendant asserts that the trial court's failure to give limiting jury instructions at the time the constancy of accusation

not she corroborated her story to outside people. And I'll instruct you on more of that in a moment. But as a limiting instruction now, please be aware what those people said [the victim] told me this. It doesn't mean that they're telling you whether or not it's true. It means they're telling you whether or not [the victim] told them. All right? . . . The victim has testified here in court as to the offense she claims was committed upon her. Now, if that was all that was present before you, you'd ask yourself why did she keep silent about it until she came here before the court to testify. So, for the sole purpose of corroborating her testimony, the state is permitted to prove that outside of court, she made the complaints of the injury done to her. Here, the witnesses Trooper Lynch, Dr. LaChapelle and [the victim's mother] testified regarding the issue of constancy of accusation. Now understand also, that these witnesses offered testimony on other areas of this case other than constancy of accusation. However, as to their testimony of constancy of accusation, this evidence is admitted solely to corroborate the testimony of the victim in court. It is to be considered by you only in determining the weight and the credibility of the victim's testimony. The fact that the victim made these statements is not being offered to prove that it happened, but merely that she claimed it happened to corroborate her court testimony. In determining the extent of such corroboration in [the victim's] statements out-of-court, you will carefully consider all the circumstances under which they are made, particularly, you should consider whether she has been constant and consistent in what she has said."

[6] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant to the particular circumstances." *State* v. *Golding*, supra, 213 Conn. 239–40.

witnesses testified violated his constitutional rights to due process and a fair trial. We are unpersuaded.

"We have previously held that the failure of the trial court to give a limiting instruction concerning the use of evidence . . . is not a matter of constitutional magnitude. . . . Absent a claim of constitutional magnitude, the defendant's unpreserved claim fails to satisfy the second prong of *Golding* and is, therefore, not reviewable."[7] (Citations omitted; internal quotation marks omitted.) *State* v. *Ortiz*, 40 Conn. App. 374, 381, 671 A.2d 389, cert. denied, 236 Conn. 916, 673 A.2d 1144 (1996). We thus conclude that the defendant's unpreserved claim does not warrant *Golding* review.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] "The first two conditions [of *Golding*] are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Graham*, 33 Conn. App. 432, 442, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994).

