STATE OF CONNECTICUT *v.* DONALD
WILLIAM MADORE
(AC 16335)

Landau, Freedman and Spallone, Js.

Argued February 21—officially released June 24, 1997

*Kenneth A. Leary*, for the appellant (defendant).

*John P. Gravalec-Pannone*, assistant state's attorney, with whom, on the brief, was *Kevin T. Kane*, state's attorney, for the appellee (state).

*Opinion*

SPALLONE, J. The defendant appeals from the judgment of conviction,[1] rendered after a jury trial, of two counts of risk of injury to a child in violation of General Statutes § 53-21[2] and one count of sexual assault in the

---

[1] The defendant was found not guilty of sexual assault in the second degree, General Statutes § 53a-71 (a) (1), and of one of three counts of risk of injury to a child, General Statutes § 53-21.

[2] General Statutes § 53-21 provides: "Injury or risk of injury to, or impairing the morals of, children. Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen

fourth degree in violation of General Statutes § 53a-73a (a) (1) (A).[3]

The defendant claims the trial court improperly (1) denied his motion in limine to exclude the testimony of a witness pertaining to prior uncharged misconduct, (2) admitted that testimony at trial, (3) denied his motion for a judgment of acquittal based on insufficiency of the evidence as to one of the counts of risk of injury to a child, and (4) permitted the victim, K, without objection, to review her written pretrial statement as part of her testimony during the presentation of the state's case.

On the basis of the evidence adduced at trial, the jury reasonably could have found the following facts. The victim, K, at the time of the incidents was fourteen years of age. In December of 1994, K began to babysit for the child of her stepfather's sister, M, with whom the defendant was living. When babysitting, K stayed overnight while the defendant and M went to work. When the defendant and M returned, K would be asleep on a couch in the living room.

On or about January 25 or 26, 1995, one or two days after her fourteenth birthday, K awakened to find that the defendant had placed her legs on his lap and was rubbing them. The defendant then moved his hands up toward K's stomach area and placed his hand beneath the elastic waistband of K's underpants. K did not say anything to M at the time, although M was home. K related this incident to her friend, L.[4]

---

years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child, shall be guilty of a class C felony."

[3] General Statutes § 53a-73a provides in relevant part: "Sexual assault in the fourth degree: Class A misdemeanor. (a) A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

[4] This incident forms the basis for one of the alleged violations of General Statutes § 53-21, risk of injury to a child.

Several days later, the defendant again inappropriately touched and engaged in improper behavior toward K. The defendant rubbed K's back and touched K's legs, buttocks and vaginal area. He then rolled K over and started to rub K's legs and stomach again and asked K if she knew what an orgasm was. K had never heard the term, and was told by the defendant that "it was like being in heaven." The defendant asked K if she wanted one and she replied no. The defendant then pulled K on top of him and moved his lower body up and down against her lower body.[5]

K did not tell M about this second incident because she thought the defendant was sorry for what he had done and she did not want to harm the relationship between the defendant and M. K did tell her friend, L, at school the next day.

K continued to babysit for M until March, 1995. She felt that the inappropriate touching by the defendant would not happen again and that she had control of the situation. The defendant continued to touch K inappropriately on occasion, however, by rubbing her near her breasts. K subsequently told her mother, M, another friend, her guidance counselor and the police what the defendant had done to her.

I

The defendant argues that, with regard to one of the counts against him involving risk of injury to a child in violation of § 53-21, the evidence was insufficient to support a conviction.

"We employ a two part analysis in reviewing the sufficiency of the evidence to sustain a criminal convic-

---

[5] This incident lasted ten to twenty-five minutes and formed the basis for the violation of General Statutes § 53a-73a (a) (1) (A), sexual assault in the fourth degree, and a violation of General Statutes § 53-21, risk of injury to a child.

tion. . . . First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Roy*, 38 Conn. App. 481, 488, 662 A.2d 799 (1995), cert. denied, 237 Conn. 902, 674 A.2d 1333 (1996); *State* v. *Coleman*, 35 Conn. App. 279, 293–94, 646 A.2d 213, cert. denied, 231 Conn. 928, 648 A.2d 879 (1994).

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . We do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." (Citation omitted; internal quotation marks omitted.) *State* v. *Alford*, 37 Conn. App. 180, 184, 655 A.2d 782, cert. denied, 234 Conn. 914, 660 A.2d 357 (1995).

The jury was offered evidence that the defendant sat next to K while she was sleeping, placed her legs on his, began rubbing her legs, and placed his hands on K's buttocks. The jury was entitled to believe the testimony of K regarding this behavior. It is "the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of witnesses."

(Internal quotation marks omitted.) *State* v. *Roy*, supra, 38 Conn. App. 489. "If evidence . . . should convince a jury beyond a reasonable doubt that an accused is guilty, that is all that is required for a conviction." (Citation omitted; internal quotation marks omitted.) Id., 488.

Our review of the evidence in the light most favorable to sustaining the verdict satisfies us that, from the facts established and the reasonable inferences to be drawn therefrom, the jury reasonably could have concluded as it did.

## II

Two of the defendant's claims involve testimony regarding uncharged prior misconduct by the defendant toward a third person, Jane Doe. The defendant claims the trial court improperly (1) denied his motion in limine to exclude the testimony of a witness pertaining to prior uncharged misconduct, and (2) admitted that testimony at trial. These claims are subject to the same analysis and necessitate the same conclusion. We conclude that the trial court did not abuse its discretion in denying the defendant's motion in limine and admitting into evidence Doe's testimony.

The following additional facts are necessary to resolve these claims. During the course of the trial, the court held a hearing outside the presence of the jury to determine whether the court should permit the state to introduce evidence of prior sexual misconduct committed by the defendant. At this hearing, the trial court heard the state's offer of proof regarding Doe's evidence indicating a pattern of conduct. Doe testified that she knew the defendant because he had lived with her and her mother from 1991 to 1994, first in Pennsylvania and later in Groton, Connecticut. She testified that, when they were living in Pennsylvania and she was thirteen and fourteen, the defendant touched her inappropri-

ately. This inappropriate touching involved the defendant giving her back massages twice a week for about eight months. She testified that the defendant, in giving her back massages, would sometimes rub her buttocks and would sometimes move his hand inside her clothes. She testified that these incidents took place in the living room of their home while she was dressed. Because she did not want to hurt her mother, she did not tell her about these incidents. She testified further that, when they were living in Groton, the defendant told her that he sometimes watched her while she showered. She also testified that she did not know K. At the conclusion of the hearing and after oral arguments of counsel, the court found that the probative value of Doe's testimony outweighed its prejudicial impact. The trial court instructed the jury on the relevancy of Doe's testimony after she testified[6] and again at the end of the trial.[7]

---

[6] The court instructed the jury as follows: "Ladies and gentlemen, I want to caution you about the evidence you have just heard from this witness, [Doe]. I permitted you to hear that evidence and for a limited purpose. That evidence is not to be used by you as evidence that the defendant had a propensity to commit the crimes with which he is charged in this case, or since he did this thing, if he did them, that [Doe] claims, that he must have committed the crimes alleged in this case. Now, remember the information charges this defendant with acts supposedly committed on [K]. He is not charged in this case with having done anything to [Doe]. I permitted you to hear this evidence about what [Doe] claims because of the claimed similarities between what [Doe] testified about and what [K] testified about. This is an issue. The issue of the similarities is an issue for you to determine and if you determine that the similarities are strong enough to be like a signature or a fingerprint, you know, you may use that in determining whether or not you believe that [K's] account of what happened is true. On the other hand, if you, the jury, determine that the similarities are not strong enough, then you should completely disregard [Doe's] testimony, and it should have no influence on your consideration of this case. I will talk to you further about the limited use, if any, of [Doe's] testimony when I give you my final instructions."

[7] The trial court's final jury instruction included the following: "Now, in this case, you heard testimony from a witness, [Doe], wherein [Doe] testified about certain conduct which had occurred, according to [Doe], between her and the defendant. Now, that evidence from [Doe] cannot be used by you to show that the defendant had a propensity to commit a crime or since

"It is well settled that evidence of prior misconduct is admissible for the limited purposes of showing intent, an element in the crime, identity, malice, motive or a system of criminal design." *State* v. *Taylor*, 239 Conn. 481, 501, 687 A.2d 489 (1996); *State* v. *Figueroa*, 235 Conn. 145, 161–62, 665 A.2d 63 (1995); *State* v. *Kulmac*, 230 Conn. 43, 60–61, 664 A.2d 887 (1994); *State* v. *Wild*, 43 Conn. App. 458, 463, 684 A.2d 720, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996). The test is two-pronged. "First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. . . . Second, the probative value of the evidence must outweigh its prejudicial effect." (Internal quotation marks omitted.) *State* v. *Kulmac*, supra, 61; *State* v. *Figueroa*, supra, 162. "The primary responsibility for conducting the prejudicial-probative balancing test rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion." *State* v. *Figueroa*, supra, 162; *State* v. *Henry*, 41 Conn. App. 169, 177, 674 A.2d 862 (1996); *State* v. *Larkin*, 38 Conn. App. 125, 132, 659 A.2d 1211, cert. denied, 235

he had done that to [Doe], he must have done what is alleged here. That testimony from [Doe] may be used by you, but only for a limited purpose or no purpose. That evidence was admitted—or offered by the state, the state claiming that there are similarities between that conduct with [Doe] and the conduct on trial here with [K]. The state claims that there were sufficient similarities in the conduct on [K] and the conduct on [Doe] that indicate that this was unique or a technique or a way, like a signature, like a fingerprint, of the way this defendant did these things. It's up to you to determine whether or not you believe either testimony of [K] or [Doe], but it's up to you to determine whether or not there is sufficient similarity in what supposedly was done with each of these people, to draw conclusions as to whether or not he—that helps you determine whether or not he did these things to [K], and it's solely up to you. It's entirely up to you. If you find there isn't sufficient similarity here, then forget it, [Doe's] testimony. But if you think there is sufficient similarity, and believe it, then you may use it to what extent you determine whether or not it's something that helps you determine whether or not these things were done to [K]. It's up to you and you alone to determine whether or not there are sufficient similarities that it becomes of some assistance to you in determining whether or not these things were done as alleged on [K]."

Conn. 903, 665 A.2d 904 (1995). "We note that [b]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *State* v. *Zoravali*, 34 Conn. App. 428, 436, 641 A.2d 796, cert. denied, 230 Conn. 960, 644 A.2d 921 (1994); *State* v. *Figueroa*, supra, 162.

"The first prong of the test requires the trial court to determine if an exception applies to the evidence sought to be admitted." *State* v. *Kulmac*, supra, 230 Conn. 61. As did the trial court in *Kulmac*, in the present case the trial court admitted the evidence that the defendant had inappropriately touched another young girl "because of its tendency to prove that the defendant possessed a common scheme to abuse young girls sexually. When evidence of other offenses is offered to show a common plan or design the marks which the uncharged and the charged offenses have in common must be such that it may be logically inferred that if the defendant is guilty of one he must be guilty of the other." (Internal quotation marks omitted.) Id. "It is apparent that the indicated inference does not arise, however, from the mere fact that the charged and uncharged offenses share certain marks of similarity, for it may be that the marks in question are of such common occurrence that they are shared not only by the charged crime and [the] defendant's prior offenses, but also by numerous other crimes committed by persons other than the defendant. On the other hand, the inference need not depend upon one or more unique or nearly unique features common to the charged and uncharged offenses, for features of substantial but lesser distinctiveness, although insufficient to raise the inference if considered separately, may yield a distinctive combination if considered together." (Internal quotation marks omitted.) *State* v. *Esposito*, 192 Conn. 166, 172, 471 A.2d 949 (1984); *State* v. *Jones*, 205 Conn.

638, 661, 534 A.2d 1199 (1987). "In order to assess the defendant's claim, we must examine the other crimes evidence and compare it to the charged offense." *State* v. *Jones*, supra, 661; *State* v. *Morowitz*, 200 Conn. 440, 443, 512 A.2d 175 (1986).

Evidence of prior sex offenses committed against persons other than the prosecuting witness is admissible to show a common design or plan where the prior behavior (1) is not too remote in time, (2) is similar to the offense charged, and (3) is committed upon a person in some way similar to the prosecuting witness. *State* v. *Kulmac*, supra, 230 Conn. 61–62; *State* v. *Esposito*, supra, 192 Conn. 169–70. The courts of this state "are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in sex related crimes than other crimes." *State* v. *Kulmac*, supra, 62; see *State* v. *Hauck*, 172 Conn. 140, 145, 374 A.2d 150 (1976).

Temporal remoteness of a prior incident is rarely, standing alone, determinative of the admissibility of such evidence. Rather, it is one factor to be considered by the trial court. *State* v. *Kulmac*, supra, 230 Conn. 62 (only two years not too remote). We conclude that the trial court did not abuse its discretion in determining that evidence of behavior that occurred two to three years prior was sufficiently recent to have probative value.

The defendant also argues that the evidence of the prior misconduct was not sufficiently similar to the charged offenses. The alleged abuse of Doe, however, was similar to the charged offenses involving K in a number of respects. They were young girls between thirteen and fourteen years old. See *State* v. *Wild*, supra, 43 Conn. App. 464. In both cases, the defendant had a close relationship with a member of the victim's family. See *State* v. *Kulmac*, supra, 230 Conn. 63; *State* v. *Wild*,

supra, 459. In both cases, the defendant took advantage of his live-in relationship with that member of the victim's family in several ways and benefited from the decisions of both victims not to reveal the incidents to preserve the relationships between the defendant and their respective relatives. Furthermore, Doe's testimony that the defendant's molestation of her began with back rubs resembled the testimony that K provided about her molestation. Doe's and K's back rubs began in the living room while they were clothed, and, in both incidents, the defendant placed his hands on the victim's buttocks.

The trial court did more than simply determine that the evidence was admissible under an approved exception to the general rule. After the stated purpose of the evidence had been disclosed, the court heard testimony and oral arguments relating to the prior behavior before permitting the evidence to go to the jury. The trial court questioned the parties about the similarities between the defendant's behavior toward Doe and K. The court was presented with "sufficient mark[s] of similarity to justify the conclusion that it is at least a reasonable facsimile of the prior incident[s]." *In re Jason S.*, 9 Conn. App. 98, 109, 516 A.2d 1352 (1986). We conclude that the trial court did not abuse its discretion when it found that the misconduct described by Doe was sufficiently similar to the conduct charged in the present case to be probative of a common scheme or design.

We next analyze whether the probative value of the evidence outweighed its prejudicial impact. See *State* v. *Kulmac*, supra, 230 Conn. 63; see also *State* v. *Figueroa*, supra, 235 Conn. 166–67. The considerable similarities between the defendant's behavior toward K and the prior uncharged misconduct rendered the evidence

highly probative.[8] See *State* v. *Figueroa*, supra, 167. The trial court, before performing the required balancing test, heard an offer of proof and arguments of counsel. Aware of the potential for prejudicial impact, the trial court instructed the jury on the limited use of the evidence in order to minimize the prejudicial impact. See id., 166–67; *State* v. *Wild*, supra, 43 Conn. App. 464; *State* v. *Larkin*, supra, 38 Conn. App. 133; *State* v. *Zoravali*, supra, 34 Conn. App. 436; see *State* v. *Brown*, 199 Conn. 47, 57–58, 505 A.2d 1225 (1986); *State* v. *Reddick*, 33 Conn. App. 311, 328, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994). The trial court, in the exercise of its discretion, after a full hearing, determined that the probative value of the evidence, indicating a system of criminal activity, outweighed its prejudicial tendency.

Given "the inherently imprecise nature of the balancing process and the limiting instructions given to the jury"; *State* v. *Figueroa*, supra, 235 Conn. 167–68; we conclude that the trial court did not abuse its discretion by denying the defendant's motion in limine and admitting the evidence of prior misconduct.

### III

The defendant also claims that the trial court improperly allowed the victim, K, to review her written pretrial statement as part of her testimony during the presentation of the state's case and that this rose to the level of a due process violation. Since this evidentiary claim

---

[8] In addition to the previously mentioned similarities, we note the probative value of the defendant's uncharged prior misconduct for another reason. The defendant, in his brief to this court, claimed that his behavior toward Doe may have been "innocent backrubs and shower viewing." He also asks, rhetorically, regarding his actions toward K, whether there is evidence "that he was doing anything more than waking her for school?" In light of the defendant's claims, we note that common plan evidence may negate "a claim that specific conduct resulted from accident or inadvertence . . . ." *State* v. *Esposito*, supra, 192 Conn. 171.

was not raised at trial, the defendant has requested a review of this claim under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).[9] "[R]obing garden variety claims [of an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature. . . . Evidentiary claims are not of constitutional magnitude and are thus not entitled to *Golding* review." (Citations omitted; internal quotation marks omitted.) *State* v. *Teel*, 42 Conn. App. 500, 504–505 n.5, 681 A.2d 974, cert. denied, 239 Conn. 921, 682 A.2d 1012 (1996); see also *State* v. *Askew*, 44 Conn. App. 280, 292, 688 A.2d 1346 (1997). We conclude that this unpreserved claim does not rise to the level of a constitutional violation and thus is not entitled to review.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, supra, 213 Conn. 239–40.