## STATE OF CONNECTICUT *v.* ROBERT L. JOHNSON
### (AC 22143)

Dranginis, Flynn and Bishop, Js.

Argued November 22, 2002—officially released April 29, 2003

*Jeremiah Donovan,* for the appellant (defendant).

*Robert J. Scheinblum,* assistant state's attorney, with whom, on the brief, were *Timothy J. Liston,* state's attorney, and *Maureen Platt Temchin,* assistant state's attorney, for the appellee (state).

*Opinion*

BISHOP, J. The defendant, Robert L. Johnson, appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A), one count of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (1) and one count of risk of injury to a child in violation of § 53-21 (2).[1] On appeal, the defendant claims (1) that the court

---

[1] General Statutes § 53a-73a (a) provides in relevant part: "A person is guilty of sexual assault in the fourth degree when: (1) Such person intentionally subjects another person to sexual contact who is (A) under fifteen years of age . . . ."

General Statutes (Rev. to 1999) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child, or (2) has contact with

improperly admitted evidence of acts of uncharged prior misconduct, and (2) that his due process rights, as guaranteed by the federal and state constitutions, were violated by requiring him to register as a sex offender without the benefit of a hearing to ascertain his dangerousness. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and his wife, Carolyn Johnson, own and operate the Quarry Town Stables (stables) in Portland, and live in a house on the premises. At the stables, they run a business boarding horses and teaching horseback riding.

The victim[2] began taking lessons at the stables when she was seven years old. When she was nine years old, she began competing in horseback riding competitions, and her time spent at the stables, under the tutelage of the defendant and his wife, increased significantly. By the time she was thirteen years old, in 1998, she was spending nearly all of her free time at the stables, competing frequently, and was nationally ranked in her age group.

One day in the summer of 1998, the defendant approached the victim from behind, while she was cleaning a horse's hooves, and grabbed her buttocks. The victim said nothing of that event at the time. In the summer of 1999, however, the defendant, on at least two more occasions, approached the victim from behind and grabbed her buttocks. The victim, on each occasion, told the defendant to stop.

---

the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony."

[2] To protect the identity of the underage victim, her name is not used in this opinion. See General Statutes § 54-86e.

Approximately one week before Labor Day weekend, 1999, while the victim was preparing a horse to ride, the defendant approached her from behind and grabbed her in a "bear hug" and did not release her when asked to do so. The victim bit the defendant. He let go of her and walked away.

On Labor Day weekend, the victim, then fourteen years old, helped the Johnsons prepare for the Haddam Neck Fair. The victim stayed with the Johnsons, and they went to the fair together. After the fair, the victim and the defendant rode in his vehicle back to the stables together. Upon their arrival at the stables, they began unloading the horses from the trailer. The last horse was reluctant to leave the trailer, and the victim asked the defendant for assistance. He approached her from behind, touched her buttocks, put his arms around her, placed his hands up underneath her shirt and grabbed her breast. A telephone then rang and the defendant left.

The victim reported the incident to a friend about one week later, and, several days thereafter, she told her mother. Subsequently, on September 20, 1999, the victim reported the incident to the police.

During the trial, held on May 21 through 24, 2001, the state introduced the testimony of three women who claimed that they had had similar encounters with the defendant. The court allowed those three witnesses to testify after a hearing on the defendant's motion in limine to exclude their evidence of uncharged prior misconduct. The state argued that the prior misconduct was relevant both to show a common scheme or pattern in the defendant's actions and to show his intent.

On May 25, 2001, the jury returned a guilty verdict on one count of sexual assault in the fourth degree and two counts of risk of injury to a child. On July 18, 2001, the defendant was sentenced on the first count to nine months imprisonment and ten years of probation con-

current with the sentence on the third count, which was six years in prison, suspended after nine months, also with ten years of probation. For the purposes of sentencing, the court merged the two counts of risk of injury to a child. The defendant was ordered to undergo a sex offender evaluation and treatment, as necessary.

Under Connecticut's sex offender registry act, General Statutes § 54-250 et seq., the defendant was required to register as a sex offender.[3] The defendant filed a motion to exclude himself from registration. The court denied the motion, finding that the court did not have authority to exclude the defendant from the mandatory statutory registration. The defendant subsequently registered as a sex offender with the commissioner of public safety.

On appeal, the defendant claims (1) that the court improperly admitted evidence of uncharged prior misconduct to prove a common scheme and intent, and (2) that by requiring him to register as a sex offender without the benefit of a hearing to establish that he is, in fact, dangerous, the court denied him his right to due process as guaranteed by the federal and state constitutions. Additional facts will be introduced as necessary.

I

The defendant claims that the court abused its discretion by allowing three witnesses to testify as to his prior

---

[3] General Statutes § 54-251 (a) provides in relevant part that "[a]ny person who has been convicted . . . of a criminal offense against a victim who is a minor or a nonviolent sexual offense, and is released into the community on or after October 1, 1998, shall, within three days following such release . . . register such person's name, identifying factors, criminal history record and residence address with the Commissioner of Public Safety . . . ."

Conviction is defined in General Statutes § 54-250 (1) as "a judgment entered by a court upon a plea of guilty, a plea of nolo contendere or a finding of guilty by a jury or the court notwithstanding any pending appeal or habeas corpus proceeding arising from such judgment." The defendant concedes that the sex offender registry act requires him to register as a sex offender. On appeal, however, he challenges its constitutionality.

uncharged misconduct. "As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused. . . . Such evidence cannot be used to suggest that the defendant has a bad character or a propensity for criminal behavior." (Internal quotation marks omitted.) *State* v. *Torres*, 57 Conn. App. 614, 621, 749 A.2d 1210, cert. denied, 253 Conn. 927, 754 A.2d 799 (2000).

Exceptions to the general rule exist for such purposes as proving a common plan, intent, identity, malice or motive. *State* v. *Colon*, 71 Conn. App. 217, 242, 800 A.2d 1268, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002). "To determine whether evidence of prior misconduct falls within an exception to the general rule prohibiting its admission, we have adopted a two-pronged analysis. . . . First, the evidence must be relevant and material to at least one of the circumstances encompassed by the exceptions. Second, the probative value of such evidence must outweigh the prejudicial effect of the other crime evidence." (Internal quotation marks omitted.) Id., 243.

"Our standard of review on such matters is well established. The admission of evidence of prior uncharged misconduct is a decision properly within the discretion of the trial court. . . . [E]very reasonable presumption should be given in favor of the trial court's ruling. . . . [T]he trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." Id.

On May 21, 2001, the court conducted a preliminary hearing to address the defendant's motion in limine to exclude the prior misconduct testimony. The state sought to introduce the testimony of six witnesses whose allegations of prior misconduct by the defendant would be relevant to prove a common plan, scheme

or pattern by the defendant in his actions. The same witnesses' testimony also was relevant, the state asserted, to the question of intent.

The first prong of the test, which is to determine whether evidence of prior misconduct falls within an exception to the rule prohibiting its admission, involves the determination of whether the evidence is relevant and material to the exception claimed. Beginning with the claim that the prior misconduct demonstrates a common plan or scheme, we note that such evidence has been determined to be relevant and material where the behavior (1) is not too remote in time, (2) is similar to the offense charged and (3) is committed against a person in some way similar to the prosecuting witness. *State* v. *Madore*, 45 Conn. App. 512, 521, 696 A.2d 1293 (1997). In the hearing on the motion to exclude the evidence, the court employed that analysis and we reprise it here.

When evaluating the first criteria, the court found that two of the six witnesses were alleging misconduct that had occurred between sixteen and eighteen years prior to the assault against the victim. In so finding, the court determined that those incidents were too remote to be the subject of testimony regarding a common scheme.[4] Those witnesses were not allowed to testify. The remaining witnesses,[5] the subject of the defendant's claim on appeal, alleged misconduct that had occurred less than three years from the date of the assault on the victim. The court found that time period to be sufficiently proximate to satisfy the first criteria. We agree.[6]

The second criteria involves a determination that the behavior being alleged by the witnesses was relevantly

---

[4] The court noted that the remoteness would pose a problem on the intent issue as well.

[5] One of the four remaining witnesses died before the trial. Hereafter, we refer only to the three who testified at trial.

[6] The defendant concedes that point in his brief.

similar to the behavior that has precipitated the present action before the court. Here, the victim alleged that the defendant, while at the stables, had approached her from behind while she was engaged in moving a horse from a trailer, touched her buttocks, put his arms around her, placed his hands up underneath her shirt and grabbed her breast.

The first witness, L, who took riding lessons from the defendant, alleged that while she was cleaning the hoof of her horse, the defendant approached her from behind and grabbed her buttocks. That occurred at the defendant's stables. L alleged a second incident in which the defendant followed her into a barn, grabbed her and attempted to kiss her.

The second witness, E, an assistant trainer at the defendant's stables, alleged that the defendant also approached her from behind, grabbed her buttocks and then attempted to kiss her. At the time, E was in the defendant's house at the stables chopping vegetables for a salad.

The third witness, P, also a student of the defendant, alleged that he had grabbed her buttocks while she was cleaning her horse's hooves. That also occurred at the defendant's stables. On another occasion, while she was in his house showing him pictures of a horse show, he attempted to kiss her and pulled her to the floor. She bit his face and ran from the house.

In this case, the common denominators in the testimony of the three witnesses and the victim, thus, are as follows: Each witness alleged incidents that took place at the defendant's stables, all the incidents involved the defendant, all the incidents involved women being approached from behind while they were unaware and engaged in work, each witness alleged that the defendant had grabbed their buttocks, in all

cases the contact was unsolicited, and in all cases the contact was a prelude to further sexual advances.

Almost inseparable from the assessment of similarities in *behavior* is the assessment in similarity of *person* between the victim and the testifying witnesses; i.e. the third criteria. In each case, the testifying witness was a woman in a professional relationship with the defendant: Two were students, and one was an employee. In all cases, the defendant was in a position of professional authority superior to the witness. In those ways, the witnesses were similar to the victim.

The court found, after considering those facts and engaging in that analysis, that the testimony of the witnesses was both relevant and material to a common plan or scheme. At this point, we note that "[t]he primary responsibility for making these determinations rests with the trial court. We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." *State* v. *Kulmac*, 230 Conn. 43, 61, 644 A.2d 887 (1994). Further, "[w]e are more liberal in admitting evidence of other criminal acts to show a common scheme or pattern in sex related crimes than other crimes." Id., 62.

The defendant argues that because the three witnesses were adult women (the victim was a minor) and the alleged incidents were not particularly distinctive, the similarities between the actions alleged by the witnesses and those of the victim were not strong enough to support the finding that they demonstrate a common plan. We disagree.

"[T]o establish a common design, the characteristics of the two offenses must be sufficiently distinctive and unique as to be like a signature. McCormick, Evidence [3d Ed. 1984] p. 560 . . . ." (Citations omitted; internal quotation marks omitted.) *In re Jason S.*, 9 Conn. App. 98, 108, 516 A.2d 1352 (1986). Although the mere act

of grabbing a person's buttocks, alone, might be insufficient to be considered " 'like a signature' "; id.; the court found that the similarities in sex, circumstances, relationship and in the specific allegations—most convincingly, all the allegations involved incidents by the defendant at his stables—outweighed the distinctions pointed out by the defendant. As the court found, the allegations demonstrate that if a woman was "employed there, [was a student or rider] there—as long as you were a woman, it sounds like there was a potential to have your buttocks area touched . . . ." In other words, there were sufficient marks of similarity to justify the conclusion that the assault against the victim was a reasonable facsimile of the prior incidents. See *State* v. *Madore*, supra, 45 Conn. App. 522. We believe that those similarities constitute a common pattern of behavior. The court's finding as to relevancy and materiality of the prior misconduct was not an abuse of discretion.

The remainder of our inquiry, the second prong of the test, concerns the balancing of the probative value of the prior misconduct against its prejudicial effect on the finder of fact. As indicated, the considerable similarities between the uncharged prior misconduct and the defendant's behavior toward the victim render the evidence highly probative. See id., 522–23.

"The care with which the trial court weighed the evidence and devised measures for reducing its prejudicial effect militates against a finding of abuse of discretion." *State* v. *Wild*, 43 Conn. App. 458, 464, 684 A.2d 720, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996). We note that before the court allowed the prior misconduct evidence, it held a hearing on the subject, out of the presence of the jury, and that after each of the witnesses had testified during trial, the court issued curative instructions to the jury to mitigate the potential prejudice of the testimony.

We also note that "[t]he exclusion of evidence of the defendant's other acts of uncharged misconduct reveals that the court carefully considered and weighed the prejudicial tendency against the probative value before ruling on the admissibility of evidence . . . ." *State* v. *McPhee*, 58 Conn. App. 501, 511, 755 A.2d 893, cert. denied, 254 Conn. 920, 759 A.2d 1026 (2000). Here, the court excluded highly probative testimony of two witnesses whose charges of prior misconduct were, the court determined, too remote in time to be sufficiently relevant. Additionally, the court curtailed the subject matter about which L was allowed to testify.

"Because of the difficulties inherent in this balancing process, the trial court's decision will be reversed only where abuse of discretion is manifest or where an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Jones*, 205 Conn. 638, 660, 534 A.2d 1199 (1987). Weighing all those facts, we conclude that the court did not abuse its discretion by admitting the evidence of prior misconduct. With the conclusion that the evidence properly was admissible to establish a common plan or scheme, we need not reach the question of whether it also was admissible to establish motive.

II

The defendant next claims that by requiring him to register as a sex offender without providing him with the opportunity for a hearing at which he could establish that he is not currently dangerous, the court denied him the procedural due process guaranteed by the federal and state constitutions.[7] To the extent that that

---

[7] See *Dept. of Public Safety* v. *Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003). It is clear from the defendant's brief and argument that his claim, premised on the fourteenth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut, raises an issue of procedural and not substantive due process.

claim is premised on the federal constitution, it is controlled by the recently issued opinion of the United States Supreme Court in *Dept. of Public Safety* v. *Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003), in which the court held that Connecticut's sex offender registry requirement does not violate procedural due process.

Although the defendant also asserts a state constitutional due process right, in his brief and at oral argument, he cited no decisional law in support of a view that in this instance, the state constitution's procedural due process protections are greater than those found in the federal constitution or should, in any manner, be subject to an analysis different from that accorded a federal procedural due process claim.

The judgment is affirmed.

In this opinion the other judges concurred.