STATE OF CONNECTICUT *v.* CLIFFORD HOLLY
(AC 27145)

Flynn, C. J., and Harper and Peters, Js.

Argued October 23, 2007—officially released March 4, 2008

*Conrad Ost Seifert,* special public defender, for the appellant (defendant).

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict,* state's attorney, *Joseph J. Harry,* senior assistant state's attorney, and *Sean T. King,* certified legal intern, for the appellee (state).

*Opinion*

PETERS, J. In this criminal appeal from a conviction of the crimes of attempt to commit murder and assault, the principal issue is the admissibility of testimony by the victim that he believed that the defendant had killed his nephew. Despite the lack of a showing that the defendant had in fact done so, the trial court admitted this testimony into evidence as prior misconduct evidence that was probative of motive. We agree with the defendant that this evidence was inadmissible, but we agree with the state that the court's improper evidentiary ruling was a harmless error that did not substantially affect the verdict. The defendant also challenges the constitutionality of a police search of an apartment near the scene of the crime, but we agree with the state that the defendant waived his right to raise this challenge. Accordingly, we affirm the judgment of the trial court.

In a substituted information filed on November 15, 2004, the state charged the defendant, Clifford Holly, with the crimes of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a),[1]

---

[1] General Statutes § 53a-49 provides in relevant part: "(a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty

assault in the first degree in violation of General Statutes § 53a-59 (a) (1)[2] and criminal possession of a pistol or revolver in violation of General Statutes § 53a-217c (a) (1).[3] After a jury trial, he was convicted of the first two counts.[4] The trial court sentenced the defendant to consecutive terms of fifteen years on the first count and ten years on the second count for a total effective sentence of twenty-five years of imprisonment followed by five years of special parole. The defendant has appealed.

The jury reasonably could have found the following facts. In the early morning hours of December 30, 2003, the victim, Walter Jefferson, twice was attacked on Union Avenue in Bridgeport by two different assailants. The victim was able to fend off his first assailant after a struggle. Shortly thereafter, the defendant approached the victim. The defendant pulled out a gun when he was about five feet from the victim and shot the victim as the victim tried to flee the scene. The victim told a police officer who arrived at the scene shortly thereafter that a man whom he knew as C.J. was the person who had shot him.

Acting on information provided by the victim, Bridgeport police officers found the defendant in a nearby apartment at 669 Union Avenue that belonged to the

of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] General Statutes § 53a-217c (a) provides in relevant part: "A person is guilty of criminal possession of a pistol or revolver when such person possesses a pistol or revolver, as defined in section 29-27, and (1) has been convicted of a felony . . . ."

[4] The court granted the defendant's motion for a judgment of acquittal on the third count because the state failed to prove the barrel length of the gun that the defendant used in the shooting of the victim.

defendant's cousin. In their search of the apartment, the police discovered a removable ceiling tile behind which they found a partially exposed plastic bag containing spent .38 caliber shell casings, the same caliber as the bullet that was later recovered from the victim. The victim later identified the defendant from a photographic array.

In preliminary hearings before the presentation of evidence to the jury, the court addressed two issues raised by the defendant. One was a motion asking the court to suppress all tangible evidence seized by the police from the apartment at 669 Union Avenue. The other was a request to preclude the state from introducing, as evidence of uncharged misconduct, testimony by the victim that he believed that the defendant had killed the victim's nephew. The defendant subsequently abandoned the motion to suppress, and the court resolved the second issue against the defendant.

In his appeal to this court, the defendant seeks to resurrect his abandoned motion to suppress and maintains that the trial court improperly decided the uncharged misconduct issue. We address each of these claims separately.

I

MOTION TO SUPPRESS

The defendant properly filed three separate motions to suppress evidence seized by the police in their warrantless search of the Union Avenue apartment in which the defendant was found soon after the shooting of the victim.[5] At a hearing to consider the merits of these motions, however, trial counsel for the defendant informed the court: "I did some diligence and research, Your Honor. That's not something I can really pursue.

---

[5] The defendant was represented by three different attorneys, each of whom filed such a motion.

I did file the motion, and it was filed well in advance of this day, but it's not something that I'm going to pursue, nor would I have any reasonable success on it." As a result, the court heard no evidence and made no findings with respect to the search conducted by the police.

On appeal, despite his categorical withdrawal of his suppression motion at trial, the defendant asks us to review, pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), the merits of his claim that the search of his cousin's Union Avenue apartment violated his constitutional rights under the fourth amendment to the United States constitution. In his view, he has standing to raise this claim because he was in the apartment as his cousin's overnight guest. Furthermore, according to the defendant, we have an adequate record on which to conduct this review because, during the evidentiary portion of the trial, several police officers testified about their entry into, and search of, the apartment. Although the state challenges the validity of each of these assertions, its more fundamental argument is that the defendant's waiver of this claim at trial bars him from raising it on appeal. We agree with the state.

"Under [*State* v. *Golding*, supra, 213 Conn. 239–40], a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring

a new trial." (Internal quotation marks omitted.) *State* v. *Fabricatore*, 281 Conn. 469, 476–77, 915 A.2d 872 (2007).

In *Fabricatore*, our Supreme Court, citing a number of cases previously decided by this court, categorically held that "unpreserved, waived claims, fail under the third prong of *Golding* . . . ." Id., 482; see also *State* v. *Cooper*, 38 Conn. App. 661, 669, 664 A.2d 773, cert. denied, 235 Conn. 908, 665 A.2d 903 (1995), cert. denied, 517 U.S. 1214, 116 S. Ct. 1837, 134 L. Ed. 2d 940 (1996). These precedents govern this case.

The defendant argues that there is a constitutionally significant distinction between waiver of a claim concerning the propriety of a jury instruction, which was the issue in *Fabricatore*, and waiver of a claim concerning the propriety of a nonconsensual search and seizure, which is the issue in this case. We disagree. Our Supreme Court has held that a defendant in a criminal prosecution may waive his right to assert any number of fundamental constitutional rights. See, e.g., *State* v. *Patterson*, 230 Conn. 385, 393, 645 A.2d 535 (1994) (judicial supervision of entire voir dire); *State* v. *Simino*, 200 Conn. 113, 125–30, 509 A.2d 1039 (1986) (right to be present during trial). In light of these precedents, the defendant's unconditional express waiver of his right to a suppression hearing in this case is governed by *Fabricatore* and, thus, his claim fails.

II

UNCHARGED MISCONDUCT

The defendant also filed a timely motion for disclosure of evidence of uncharged misconduct that the state intended to introduce at trial. In response, the state made an offer of proof regarding testimony by the victim that he had been told by one of his nephews that the defendant had killed another nephew. Over the defendant's objection, the court permitted the jury to hear

this testimony because, in the court's view, it was probative of the defendant's motive, and its probative value outweighed its prejudicial effect.[6] In this appeal, the defendant challenges the validity of the court's ruling.

The defendant's claim of error requires us to address two issues. We first must decide whether the trial court properly construed and applied § 4-5 (b) of the Connecticut Code of Evidence, which provides that "[e]vidence of other crimes, wrongs or acts of a person is admissible . . . to prove . . . motive . . . ." If we conclude that the court's ruling was improper, we must then decide whether it substantially affected the verdict. We agree with the defendant that § 4-5 (b) did not authorize the court's ruling, but we agree with the state that the ruling was harmless error.

A

Our Supreme Court recently has clarified the standard of review that governs appellate appraisal of claims of evidentiary error by the trial court. In *State v. Saucier*, 283 Conn. 207, 926 A.2d 633 (2007) (en banc), the court enunciated a two part test. "To the extent a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. . . . We review the trial court's

_____

[6] Our appellate courts have established several principles with regard to the admission of prior misconduct evidence. "It is well settled that evidence of prior misconduct is admissible for the purpose of showing knowledge, intent, motive, and common scheme or design, but is not admissible to prove that a defendant is guilty of the crimes with which he is charged. . . . Uncharged misconduct evidence relates to a collateral, uncharged crime and does not prove the commission of the principal crime with which the defendant is charged." (Citation omitted.) *State v. Gibson*, 75 Conn. App. 103, 109–10, 815 A.2d 172 (2003), rev'd in part, 270 Conn. 55, 850 A.2d 1040 (2004). "The trial judge, however, must determine in the exercise of judicial discretion that its probative value outweighs its prejudicial tendency. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State v. Falby*, 187 Conn. 6, 23, 444 A.2d 213 (1982).

decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." Id., 218.

Applying the *Saucier* standard of review to the claim of evidentiary error in this case, we must first decide whether the trial court's ruling was based on a correct interpretation of § 4-5 (b). The question is whether the phrase "evidence of other crimes, wrongs or acts of a person" requires proof that the "other crimes, wrongs or acts" actually occurred.

Our Supreme Court's holding in *State* v. *Aaron L.*, 272 Conn. 798, 865 A.2d 1135 (2005), is the proper starting point for our analysis. In *Aaron L.*, one issue was whether the trial court, before admitting prior misconduct evidence in a case alleging sexual misconduct as evidence of a common scheme or plan,[7] was required to find by a heightened standard of proof that the prior misconduct in fact occurred. Id., 821. The defendant conceded that the prior conduct had occurred but denied that the conduct was unlawful. Id., 822. Under those circumstances, the court held that "whatever inferences should be drawn from the defendant's prior conduct are for the *jury* to determine." (Emphasis in original.) Id., 824.

The crucial distinction between *Aaron L.* and this case is that the state did not introduce evidence of record to substantiate the role, if any, that the defendant played in the death of the victim's nephew. All we have before us are statements to that effect by the victim and other members of his family. Even more important, the defendant never conceded that he had assaulted the nephew. Unlike the facts of *Aaron L.*, the trial court

---

[7] As our Supreme Court noted, "[w]e are more liberal in admitting evidence of other criminal acts to show common scheme or pattern in sex related crimes than other crimes." (Internal quotation marks omitted.) *State* v. *Aaron L.*, supra, 272 Conn. 821.

in this case did not, and could not, find that there was sufficient evidence for the jury to find that the defendant had committed the prior act.

We are persuaded that § 4-5 (b) does not permit the introduction of opinion evidence about prior misconduct without any evidence that the prior conduct in fact occurred. Certainly, when evidence of prior misconduct is offered to show a common plan or design, the dispositive inquiry is whether the prior conduct in fact shares certain distinctive features with the charged conduct. It is that factual resemblance that makes it reasonable to infer that the defendant committed the charged act in a similar manner. See *State* v. *Morowitz*, 200 Conn. 440, 448, 512 A.2d 175 (1986). Underscoring the importance of focusing on the conduct itself, *Morowitz* held that "it is not necessary for the prior offense to have resulted either in an arrest or a conviction." Id., 449. Nothing in the text of § 4-5 suggests that the draftsmen intended to adopt a different standard when evidence of prior misconduct is offered to prove motive rather than identity. As Professor Colin Tait opines, "[p]rior misconduct is proved by evidence of the act done . . . ." C. Tait, Connecticut Evidence (3d Ed. 2001) § 4.19.2, p. 233.

In sum, because the victim's testimony about what had happened to his nephew was based not on actual knowledge but on information received from a family member, it was insufficient evidence for a jury reasonably to find that the defendant in fact had committed the uncharged act. Evidence of prior misconduct requires a more definitive showing of the misconduct than this record contains.

B

Having concluded that the trial court improperly permitted the victim to testify that he had been told that the defendant had killed the victim's nephew, we must

now decide whether admission of this evidence requires us to order a new trial of the charges of which the defendant was convicted. Because the improper admission of this evidence was not a constitutional error, "the defendant bears the burden of demonstrating that the error was harmful." (Internal quotation marks omitted.) *State* v. *Sawyer*, 279 Conn. 331, 352, 904 A.2d 101 (2006). "[A]n appellate court may conclude that a nonconstitutional error is harmless only when it has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 411–12, 902 A.2d 1044 (2006).

The defendant argues that the evidence beyond the testimony of the uncharged misconduct "was not overwhelming" and that this court therefore could not arrive at a fair assurance that the victim's testimony did not substantially affect the verdict. We disagree. First, the trial court issued a cautionary instruction with regard to the testimony of the uncharged misconduct, limiting its use to the issue of motive and expressly prohibiting the jury from using it as evidence of the defendant's character or as evidence of a tendency to commit criminal acts. Second, the remaining evidence was sufficient for the jury to have found the defendant guilty. The victim testified that he knew the defendant from prior confrontations, that he recognized the defendant on the night of the shooting and that the defendant shot him from close range. The victim also identified the defendant as the shooter from a photographic array shortly after the incident. In addition, when the police located the defendant at an apartment near the shooting, they recovered a plastic bag containing spent .38 caliber shell casings, the same caliber as the bullet that was removed from the victim. On the basis of this evidence, we have a fair assurance that the testimony of the

uncharged misconduct did not substantially affect the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.