### STATE OF CONNECTICUT *v.* DENIS J. HICKEY (AC 31222)

Lavine, Alvord and McDonald, Js.

---

Argued March 17, 2011—officially released May 15, 2012

534

*Ioannis A. Kaloidis*, for the appellant (defendant).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *David Shepack*, state's attorney, and *Dawn Gallo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Denis J. Hickey, appeals from the judgment of conviction, rendered following a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that (1) the court abused its discretion when it denied his motion for a continuance so that he could obtain private counsel and further investigate the charges brought by the state, (2) the court improperly admitted evidence of (a) the defendant's prior, uncharged sexual misconduct against another minor and (b) hearsay statements pursuant to the medical treatment exception, (3) prosecutorial misconduct deprived him of a fair trial, (4) the court violated his right against double jeopardy by imposing consecutive sentences and (5) the court improperly denied his request to conduct an in camera review of the victim's mental health records. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In June, 2001, the victim,[1] along with the rest of her family, lived with the defendant. The victim was five years old at this time and was scheduled to start kindergarten in the fall. While the defendant generally treated the victim's two brothers "pretty good," he treated the victim differently, and she "became very attached to [the defendant] at one point." Between April and October, 2001, the victim's family often stayed at a campground with the defendant and slept in his trailer. During one of those camping trips, the defendant digitally penetrated the victim's anus while she was sleeping (campground incident). The victim woke up during the incident and recognized that the defendant was touching her.[2]

In December, 2002, after the victim and her family moved out of the defendant's house, the victim and her brothers were listening to a song that included the word "sex." The victim began dancing and saying the word "sex" while thrusting her hips. After the victim's mother, K.B., explained to her that this was an inappropriate word, the victim asked: "Why? Sex is what [the defendant] did to me." Upon hearing this, K.B. called "a [University of Connecticut] hotline and presented what had just been said to" her. Soon thereafter, the department of children and families contacted K.B. and she then filed a police report. The police set up a videotaped interview with a multidisciplinary child abuse team. K.B. testified that this initial disclosure of abuse by the victim pertained to an incident that occurred at the defendant's house (house incident) and not at the campground.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[2] The victim testified that, although she did not see the defendant, she could identify him because he was talking to her and she "recognized his voice."

After the interview with the multidisciplinary child abuse team, the victim underwent a physical examination performed by Judith Moskal-Kanz, a pediatric nurse-practitioner and forensic medical examiner for child abuse, at Saint Mary's Hospital in Waterbury. Moskal-Kanz conducted a general physical and colposcopic examination of the victim's genitals. During the examination, the victim made repeated spontaneous disclosures that the defendant had touched her in the areas that Moskal-Kanz was examining. On the basis of the examination, Moskal-Kanz made findings that the victim had injuries to her vagina "consistent with penetration" caused by repetitive friction from sexual abuse. She also testified that the victim's "anal exam was normal" but that this did not "suggest" anything to her because "[t]here's usually not an anal injury during sexual abuse unless you're talking about a rather forceful act or a very repetitive act over a long term."

In 2006, the victim disclosed the campground incident to her mother. K.B. later reported this disclosure to the police. The victim gave another videotaped interview to a multidisciplinary child abuse team. The defendant was charged with sexual assault in the first degree and risk of injury to a child in connection with the campground incident. On March 6, 2009, the jury found the defendant guilty as to both counts. On June 12, 2009, the court sentenced the defendant to an effective term of thirty years of imprisonment, suspended after twenty years, and thirty-five years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the court abused its discretion by denying his motion for a continuance to (1) allow him more time to investigate the charges and (2) obtain private counsel. We disagree.

"The determination of whether to grant a request for a continuance is within the discretion of the trial court, and will not be disturbed on appeal absent an abuse of discretion. . . . A reviewing court is bound by the principle that [e]very reasonable presumption in favor of the proper exercise of the trial court's discretion will be made. . . . To prove an abuse of discretion, an appellant must show that the trial court's denial of a request for a continuance was arbitrary. . . . There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, *particularly in the reasons presented to the trial judge at the time the request is denied.* . . .

"Among the factors that may enter into the court's exercise of discretion in considering a request for a continuance are the timeliness of the request for continuance; the likely length of the delay . . . the impact of delay on the litigants, witnesses, opposing counsel and the court; the perceived legitimacy of the reasons proffered in support of the request . . . the timing of the request; the likelihood that the denial would substantially impair the defendant's ability to defend himself; [and] the availability of other, adequately equipped and prepared counsel to try the case . . . . We are especially hesitant to find an abuse of discretion where the court has denied a motion for continuance made on the day of the trial." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Ross V.,* 110 Conn. App. 1, 7–8, 953 A.2d 945, cert. denied, 289 Conn. 939, 958 A.2d 1247 (2008).

The following additional facts are relevant to this claim. On July 27, 2007, the state filed a demand for notice of alibi defense, which alleged that the defendant sexually abused the victim at some point between April and June, 2002. The police report also stated that the campground incident took place between April and

June, 2002.[3] One week prior to jury selection, however, the state filed the long form information, which alleged that the abuse occurred not in 2002 but in 2001.

On February 11, 2009, just prior to jury selection, the defendant requested a continuance on two separate grounds. First, the defendant argued that he needed additional time to investigate the charges and locate potential witnesses in light of the change of the date of the abuse from 2002 to 2001. The defendant argued that the change in dates "impacts any potential alibi, although with the wide range of months here, it would probably be impossible to establish an alibi, but it does require more work on our part to establish what took place during calendar 2001 as opposed to 2002." Additionally, the defendant claimed that he was attempting to locate witnesses in Florida who would testify "that this incident could not have occurred in calendar year 2001 as described . . . ."

Second, the defendant argued that the court should grant him a continuance so that he could retain private counsel. The defendant's counsel, an assistant public defender, stated that he was informed only two days earlier of the defendant's intention to hire private counsel. Although the defendant had not yet finalized arrangements with the private attorney, the defendant's counsel argued that the defendant had the ability to retain the private attorney and that the attorney was "willing to represent him . . . ." Additionally, the defendant had "a substantial professional relationship with this law firm" because it had "represented him on at least three different occasions . . . ." The defendant's counsel then stated that "[a]nother few weeks, Your Honor, I submit, is not going to hurt anyone here,

---

[3] K.B. testified that although she originally told the police that her family had camped with the defendant between April and October of 2000 to 2002, this time range was overly broad. In fact, K.B. and her family only camped with the defendant during the 2001 season.

and it will benefit [the defendant], and that's what he's asking for."

The court denied the request for a continuance on both grounds. As to the defendant's request to further investigate the allegations, the court explained that the defendant was not prejudiced by the change in dates because the original dates had a broad time range and the defendant previously had notice that the original dates might have been inaccurate.[4] As to hiring a private attorney, the court explained that the public defender appointed to represent the defendant was an "experienced criminal lawyer" and that the defendant had had eighteen months to hire a private attorney but had failed to do so even though he had "substantial means . . . ."

The court, however, told the defendant, "[i]f you bring it to the court's attention, some viable witness . . . [i]f you produce to the court some viable witness, that there may be some type of issue about getting that person here, I'll try to make some accommodations . . . in terms of that witness for the jury. We can have some flexibility on that issue." The court then scheduled the last day of jury selection for February 19, 2009, and the first day of evidence for March 4, 2009, stating, "[a]nd that gives [the defendant's counsel] two weeks to work on his investigation." The court asked the defendant's counsel whether his "sole focus now will be on this case

[4] The prosecutor explained to the court that, "right from the beginning," the parties "had numerous discussions about the fact that the year is off." The prosecutor also argued that documents provided to the defendant during discovery "note[d] that in 2002 the mother of this child had ended the relationship with [the defendant] and moved out. So, there was notice in the file provided to the defense prior to the long form and even prior to our discussions of any length that this couldn't be possible because the child was out of the home, wasn't near [the defendant], for all intent and purpose, after that date." The defendant conceded that "there were discussions about this," and that he "pointed out to [the prosecutor] that the time line that she had provided would seem to make this scenario not at all likely in calendar 2002 . . . ."

. . . ." The defendant's counsel responded by stating, "[u]ndoubtedly, Your Honor."

A

On appeal, the defendant first claims that the court abused its discretion by denying his request for a continuance because the change in dates precluded "the defendant from presenting the evidence and defense he had prepared to present." We conclude that the denial on the first ground of the defendant's request was not arbitrary in light of the reasons presented by the defendant at trial and the practical result of the court's scheduling and offer to accommodate the defendant.

We first note that the defendant's claim is not based on a change in the charging document itself because the long form information the defendant received one week before jury selection, which alleged 2001 as the year of the abuse, was the first such charging document the defendant received. Rather, the defendant's claim is based on other documents provided to the defendant prior to trial, namely, the notice of alibi defense and the police report, which conflicted with the long form information by stating that the abuse occurred in 2002 instead of 2001.

Although the court denied the defendant's request, it stated that the schedule would provide the defendant with two weeks between jury selection and the presentation of evidence during which he would be able to "work on his investigation." The defendant, therefore, essentially received the additional time he was seeking, which was "[a]nother few weeks . . . ." Moreover, the court stated that if the defendant was having trouble arranging the testimony of one of the witnesses he was trying to locate, the court would be willing, upon the defendant's request, to "make some accommodations

. . . ." Our review of the record indicates that the defendant never made such a request or renewed his request for a continuance. Therefore, the court specifically addressed the two reasons underlying the defendant's request for a continuance and either accommodated or offered to accommodate the defendant in both regards. In light of these accommodations and the other factors set forth in *State* v. *Ross V.*, supra, 110 Conn. App. 8, we conclude that the court did not abuse its discretion in denying the continuance.[5]

B

The defendant also claims that the court abused its discretion when it denied his request for a continuance so that he could obtain private counsel. We disagree and conclude that the court did not abuse its discretion in denying the request.

This claim is governed by *State* v. *Hamilton*, 228 Conn. 234, 636 A.2d 760 (1994). In that case, "the [d]efendant moved for a continuance to obtain private counsel on the second day of trial, after the jury had been impaneled, but before evidence had been presented." Id., 247. "The gravamen of the defendant's complaint was that the same assigned counsel had recently

---

[5] The defendant argues that *Ramos* v. *Ramos*, 80 Conn. App. 276, 835 A.2d 62 (2003), cert. denied, 267 Conn. 913, 840 A.2d 1175 (2004), instructs this court to reverse a denial of a continuance request when relevant evidence is disclosed shortly before trial. The facts of *Ramos*, however, are distinguishable from this case. *Ramos* involved a personal injury action in which damages was the only issue. Id., 285. The defendant learned, the day before trial, that the plaintiff had hepatitis. Id., 279–80. The trial court denied the defendant's request for a continuance to obtain an expert to testify that the plaintiff's medical condition bore on the issue of damages. Id., 280–84. This court held that the trial court arbitrarily denied the continuance request. Id., 285. This court explained that, because "[t]he defendant had *no reason to suspect* that the plaintiff had hepatitis," he "would not have specifically questioned him about it during the deposition," and since the plaintiff's condition was relevant, the court erred in denying the continuance. (Emphasis added.) Id., 284–85. Unlike in *Ramos*, however, the defendant here had "reason to suspect" that the 2002 dates were wrong.

represented him in an unrelated case that had resulted in a sentence of twenty-five years of incarceration. The defendant did not claim, however, that . . . assigned counsel was unprepared to go forward, unskilled in the issues at hand, or unresponsive to the defendant's wishes about the manner in which his defense should proceed." Id., 249. Additionally, the court noted that "the defendant had more than nine months between the time of his arrest and trial in order to retain private counsel." Id., 250. Our Supreme Court concluded that the trial court therefore did not act "arbitrarily or unreasonably in denying the defendant's motion for a continuance." Id., 249.

Similarly, the defendant in this case only informed appointed counsel two days before jury selection that he was seeking private counsel. The defendant also did not present the court with any substantive reason to replace his court-appointed counsel, but instead sought private counsel because of the private firm's past representation of him. Moreover, the defendant had eighteen months to obtain private counsel but did not do so even though he apparently was appointed a public defender despite not qualifying for such representation. Therefore, the trial court did not abuse its discretion in denying the request for a continuance made on the day of jury selection because its "interest in the efficient administration of justice weighed heavily at that time." Id., 247.

II

The defendant's second set of claims is that the court abused its discretion in admitting evidence of (1) the defendant's prior, uncharged sexual misconduct involving another minor and (2) hearsay statements pursuant to the medical treatment exception. We conclude that the court did not abuse its discretion.

"We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . The trial court has wide discretion to determine the relevancy [and admissibility] of evidence . . . . In order to establish reversible error on an evidentiary impropriety . . . the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Citations omitted; internal quotation marks omitted.) *State* v. *Cecil J.*, 291 Conn. 813, 818–19, 970 A.2d 710 (2009).

A

The defendant argues that the court abused its discretion in admitting the testimony of another witness who claimed that the defendant sexually abused her. Specifically, the defendant argues that the difference between the ages of the witness and the victim was too great at the time of the abuse, "the uncharged events were either not proximate in time or were uncertain as to temporal proximity to the instances alleged in the [s]tate's information," and "the manner in which [the witness'] assault occurred was only somewhat similar to the incidents charged." We disagree.

The following additional facts are relevant to this claim. At trial, the state called R.N., a cousin of the defendant's former spouse, to testify as to prior, uncharged incidents in which the defendant sexually abused her. On February 24, 2009, the court heard arguments on whether to admit R.N.'s testimony of prior misconduct. The state proffered that R.N. would testify that she baby-sat for the defendant's children, and in the spring or summer of 1999, when R.N. was twelve or thirteen years old, the defendant touched her on three separate occasions while she was sleeping at the

defendant's house. The prosecutor stated: "The first time she woke up to [the defendant] touching her breasts under her shirt. The second time he was touching her breasts inside her shirt, her jeans were unbuttoned and unzipped, and he had just started touching her vagina with his finger. The third time she woke up [the defendant] had his fingers in her vagina and he ran his leg down her leg and asked if she was cold and put more pellets in the wood stove."

The state then explained, "[w]ith respect to the similarities between the complainants in each case, these are young girls. They are family members, and I use that word 'family' in quotation marks because of the way families are built nowadays. The girl, R.N., was [a cousin] of [the defendant's] wife, okay, and very much involved in that family, in fact, baby-sitting for them. The instant complainant . . . was akin to a stepdaughter to [the defendant] because they were living in that family unit. He was the father figure at the time that they were living together. . . . The victims were both . . . clothed at the time that the incidents occurred. [The complainant in this case] will tell you that she was in pajamas. R.N. will tell you that she had clothing on because she was baby-sitting. Both young ladies were sleeping at the time that the incidents occurred. . . . The abuse stopped and the defendant walked away from the scene [when the victims awoke]. . . . The incidents with R.N. occurred in the home dwelling of the defendant. The incidents of misconduct with the complainant in this case . . . occurred both in the family home and the alternate family dwelling, the camper, as I stated, where the family spent their weekends very much of their time split between; so they both occurred within the domain of the defendant . . . ."

The defendant responded by arguing, "there is an age difference here. We're talking about an incident of R.N. which takes place prior, two years prior. She's thirteen.

She's in a—almost a working capacity as a baby-sitter at the time. It's not the same as a child or a stepchild, which is what [the complainant in this case] essentially was. . . . They take place at different locations." The court then stated that it would make a ruling on the issue in two days, giving the parties additional time to research whether the victims were sufficiently similar.

On February 26, 2009, after hearing the parties' final arguments on the issue, the court ruled that it would admit R.N.'s testimony regarding the prior sexual abuse as propensity evidence. The court first explained that the incidents were not too remote in time. Next, the court found that the incidents and the victims were sufficiently similar, echoing the factors mentioned in the state's proffer. Finally, the court cited *State* v. *James G.*, 268 Conn. 382, 844 A.2d 810 (2004), and explained, "in that case the uncharged misconduct victim stated that the sexual abuse started when she was . . . seven and it continued until the age of, I think, thirteen or fourteen, which indicated to me that the lust or the desire started at a young age and it still continued to the period in a child's life when the child was thirteen or fourteen. . . . So, based on the lack of remoteness and time . . . the similarities in the offenses and the fact that the girls were both . . . young, underdeveloped prepubescent girls, the court's going to admit the testimony for the purpose of uncharged misconduct . . . as propensity evidence."

We begin our review of the defendant's claim by detailing the requirements for admitting evidence of prior, uncharged sexual misconduct. "As a general rule, evidence of prior misconduct is inadmissible to prove that a criminal defendant is guilty of the crime of which the defendant is accused." (Internal quotation marks omitted.) *State* v. *DeJesus*, 288 Conn. 418, 440, 953 A.2d 45 (2008) (en banc). In *DeJesus*, however, our Supreme

Court created an exception to this general rule for sex crimes. Id., 463, 470–71.

In that case, our Supreme Court held that evidence of prior, uncharged sexual misconduct is admissible for propensity purposes "only if it is relevant to prove that the defendant had a propensity or a tendency to engage in the type of aberrant and compulsive criminal sexual behavior with which he or she is charged. Relevancy is established by satisfying the liberal standard pursuant to which evidence previously was admitted under the common scheme or plan exception. Accordingly, evidence of uncharged misconduct is relevant to prove that the defendant had a propensity or a tendency to engage in the crime charged only if it is: (1) . . . not too remote in time; (2) . . . similar to the offense charged; and (3) . . . committed upon persons similar to the prosecuting witness." (Internal quotation marks omitted.) Id., 473. We conclude that the evidence of the defendant's prior, uncharged sexual misconduct satisfies this test.

As to the first of the three relevancy prongs, remoteness in time, R.N. testified that she was abused by the defendant in the spring or summer of 1999, while the record indicates that the abuse perpetrated upon the victim occurred between April and October, 2001. The difference in time here clearly is not remote. See *State* v. *Romero*, 269 Conn. 481, 498–500, 849 A.2d 760 (2004) (nine year gap not too remote); *State* v. *Kulmac*, 230 Conn. 43, 62, 644 A.2d 887 (1994) (seven year gap not too remote).

Applying the second prong, similarity to the offense charged, the abuse of R.N. and the victim was similar in character. Both were sleeping in a residence owned by the defendant, were digitally penetrated by the defendant and the abuse stopped when they awoke. See *State*

v. *DeJesus,* supra, 288 Conn. 475; *State* v. *James G.,* supra, 268 Conn. 393.

The similarity of the witness and the victim, however, is a closer question because of the ages of R.N. and the victim at the time of the abuse. The victim was five years old, and R.N. was either twelve or thirteen and was a baby-sitter for the defendant. We conclude, nevertheless, that the girls were sufficiently similar.

First, the jury reasonably could have found that R.N. and the victim were in a familial-type relationship with the defendant. See *State* v. *James G.,* supra, 268 Conn. 392–94; *State* v. *Merriam,* 264 Conn. 617, 662–63, 835 A.2d 895 (2003) (in both charged and uncharged incidents, defendant "had access to the victim of the abuse because of his familial or familial-type relationship with her"). For example, R.N. testified that she did not tell anyone about the abuse right away because she was "very close to" the defendant's then-wife, to whom R.N. is related, and she did not "want to be the reason that something broke up their family . . . ." K.B., who was dating the defendant at the time of the victim's abuse, testified that the defendant treated the victim differently from how he treated her other children, the victim "became very attached to" the defendant and that she encouraged that relationship because the defendant "was somebody that [she] thought that [she] would be with for forever at that point."

Second, the age difference is not sufficiently large so as to outweigh the first two factors. For example, in *State* v. *Wild,* 43 Conn. App. 458, 459–60, 462, 464–65, 684 A.2d 720, cert. denied, 239 Conn. 954, 688 A.2d 326 (1996), this court held that the trial court did not abuse its discretion in admitting evidence of uncharged sexual misconduct by the defendant against a fourteen year old who had baby-sat for the defendant in a case involving a seven year old victim. The court explained that "[b]oth

of the victims were young, undeveloped girls whom the defendant knew well." Id., 464. Additionally, in *State* v. *Johnson*, 76 Conn. App. 410, 819 A.2d 871, cert. denied, 264 Conn. 912, 826 A.2d 1156 (2003), the court rejected the defendant's argument that, "because the three witnesses were adult women"; id., 418; and the victim was thirteen or fourteen years old at the time of the abuse; id., 412; the trial court erred in admitting the uncharged sexual misconduct testimony. Id., 419.

The defendant cites *State* v. *Ellis*, 270 Conn. 337, 852 A.2d 676 (2004), as support for his argument that the abuse and the victims are dissimilar in this case. In *Ellis*, the defendant's abuse of one victim, Sarah S., "was far more frequent and severe" than that of the other victims. Id., 359. The defendant abused Sarah S. on seven different occasions, and "the incidents involved a wide range of misconduct, including: (1) 'talking dirty' on the telephone and attempted phone sex; (2) multiple incidents of touching her breasts, thighs and in between her legs; (3) masturbating and ejaculating in her presence; (4) attempting to force her to perform oral sex; (5) attempting to force his tongue into her mouth; (6) digital penetration; (7) attempting to climb on top of her while she was lying in bed; and (8) repeated requests that she 'pleasure' him." Id. The abuse against the other girls, in contrast, involved only one or two incidents each and was not "nearly as extreme as the defendant's abuse of Sarah S., a fact expressly noted by the trial court." Id., 360.

We are not persuaded that the facts of *Ellis* are analogous to this case. As mentioned, the abuse in this case was similar and both victims were in a familial-like relationship with the defendant, which is distinctly different from *Ellis*. Therefore, the court did not abuse its discretion in admitting R.N.'s testimony under the three relevancy prongs, especially considering the significant support for admission provided by the first two

prongs. See *State* v. *Romero*, supra, 269 Conn. 498 ("this inquiry should focus upon each of the three factors, as a single factor will rarely be dispositive").[6]

B

The defendant also argues that the court abused its discretion in admitting, pursuant to the medical treatment exception to the hearsay rule, Moskal-Kanz' testimony regarding the victim's statements to her during an examination. Specifically, the defendant argues that, rather than being for medical purposes, the Moskal-Kanz examination was intended to aid in the prosecution of the defendant. We disagree.

The following additional facts are relevant to this claim. As noted, after the victim's first multidisciplinary child abuse team interview, the police and the child abuse team referred K.B. to Moskal-Kanz to have the victim examined. Both K.B. and the victim testified that the purpose of the examination was to determine if the victim had been physically injured as a result of sexual abuse.

Prior to Moskal-Kanz' testimony before the jury, the state conducted a voir dire examination of her as a proffer that her testimony was admissible under the medical treatment exception to the hearsay rule.

---

[6] The defendant also argues, relying on *State* v. *Holly*, 106 Conn. App. 227, 941 A.2d 372, cert. denied, 287 Conn. 903, 947 A.2d 344 (2008), that there was insufficient evidence "that the defendant actually committed the acts of uncharged misconduct . . . ." We need not address this argument, however, because it was not raised in the trial court. "Our review of evidentiary rulings made by the trial court is limited to the specific legal ground raised in the objection [to the trial court]. . . . This court reviews rulings solely on the ground on which the party's objection is based. . . . [T]o afford petitioners on appeal an opportunity to raise different theories of objection would amount to ambush of the trial court because, [h]ad specific objections been made at trial, the court would have had the opportunity to alter [the charge] or otherwise respond." (Citation omitted; internal quotation marks omitted.) *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 297 Conn. 105, 133–34, 998 A.2d 730 (2010).

Moskal-Kanz explained that she had examined the victim for sexual abuse. Specifically, she stated that the purpose of her examinations is to evaluate whether the children "have sustained any injuries, any infections, do they need treatment, and to offer reassurance to them as to whether or not they are well."

The defendant objected to the admission of the testimony regarding the victim's statements during the examination, arguing that it was hearsay that did not fall within the medical treatment exception. The defendant argued that the examination was not for medical purposes but instead was intended to pursue a criminal prosecution. After hearing the state's argument that the victim's and K.B.'s testimony demonstrated that the victim believed the examination was for medical purposes, the court ruled that Moskal-Kanz' testimony was admissible under the medical treatment exception.

Pursuant to § 8-3 of the Connecticut Code of Evidence, "[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . (5) . . . A statement made for purposes of obtaining medical treatment or advice pertaining thereto and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to the medical treatment or advice." Conn. Code Evid. (2000) § 8-3. "In other words, the admissibility of out-of-court statements made by a patient to a medical care provider depends on whether the statements were made for the purposes of obtaining medical diagnosis or treatment." (Internal quotation marks omitted.) *State* v. *Miller*, 121 Conn. App. 775, 780, 998 A.2d 170, cert. denied, 298 Conn. 902, 3 A.3d 72 (2010). "In sexual abuse cases, statements made by the complainant about the identity of the person causing the injury may be found relevant to proper diagnosis and treatment." *State* v. *Telford*,

108 Conn. App. 435, 440, 948 A.2d 350, cert. denied, 289 Conn. 905, 957 A.2d 875 (2008).

The defendant argues that, because the victim was referred to Moskal-Kanz by the police, the examination was not for medical purposes. This same argument, however, was rejected in *State* v. *Anderson*, 86 Conn. App. 854, 864 A.2d 35, cert. denied, 273 Conn. 924, 871 A.2d 1031 (2005). In that case, the defendant argued that the purpose of the victim's examination was investigative rather than medical because the police referred the victim to the examiner and the examiner "sent a copy of her report to the police . . . ." Id., 874. This court held that the trial court did not abuse its discretion in admitting the testimony of the victim's statements to the examiner because there was sufficient evidence that the purpose of the examination was for medical treatment. Id., 877–79. Additionally, in *State* v. *Cruz*, 260 Conn. 1, 12–14, 792 A.2d 823 (2002), the court held that a social worker's interview with the victim was admissible under the medical treatment exception despite the fact that the police were present for part of the interview, it was videotaped and the hospital sent the videotape to the police. Our Supreme Court explained, "[t]here is no evidence that [the social worker] was, in fact, employed by either police department or that she had assisted in any capacity in the departments' respective investigations of the alleged abuse." Id., 12; see also *State* v. *Miller*, supra, 121 Conn. App. 783 (police officer presence "does not undermine the medical treatment purpose of the interview").

Similarly, there is no evidence that Moskal-Kanz was employed by or working under the direction of the police in this case. She also indicated that her role as a forensic examiner was not to help to prepare a case for a criminal prosecution, but, rather, to diagnose and treat potential injuries. The victim and her mother also testified that they believed the examination was meant

for treatment purposes. The fact that an examination may be done at the suggestion of police authorities, or that the results may be provided to police authorities, does not remove statements made during the examination from the purview of the medical treatment exception. Therefore, in light of the rationale of the medical treatment exception, which is "that we presume that such statements are inherently reliable because the patient has an incentive to tell the truth in order to obtain a proper medical diagnosis and treatment"; (internal quotation marks omitted) *State* v. *Miller*, supra, 121 Conn. App. 780; the court did not abuse its discretion in admitting Moskal-Kanz' testimony.

## III

The defendant next claims that the prosecutor made an improper statement in front of the jury that deprived him of a fair trial. We conclude that, even if the statement amounted to prosecutorial misconduct, it did not deprive the defendant of his due process right to a fair trial.

The following additional facts are relevant to this claim. During the defendant's case-in-chief, the defendant called his only witness, Victor Vega, the victim's former pediatrician, to testify. The defendant sought to have Vega testify as to one document in the victim's file to which K.B. waived her privacy rights. During Vega's testimony, it came to light that he may have reviewed additional documents in the victim's file without obtaining the victim's permission. The prosecutor then made the following statement in front of the jury: "I'd ask to voir dire the witness at this point because there's no executed waiver of privilege, and if he has reviewed documents with this lawyer outside of the— an executed waiver of privilege, he has committed a crime." At this point, the court excused the jury and discussed the objection.

After the state voiced its concern that Vega's testimony implied that he reviewed all of the victim's medical records, rather than just one document, the court told defense counsel, "[s]o, would you be better off asking if you reviewed the one document. I mean, that would eliminate this issue." The court then admonished the prosecutor: "All right. But let's not make accusations that someone's done something to the level that you . . . had; it really isn't fair to [the defendant's counsel]. And I thought that was very inappropriate that you did that. . . . [A]ll you do is, you excuse the jury and we, in a very calm and collect[ed] way, take it up."

Upon the jury's return, the court stated: "And ladies and gentlemen, disregard any type of discussion about the last question and any heated type of argument. It's just not part of the case, so disregard it. I think we're back on track." Vega went on to testify that on May 15, 2002, he noted in the victim's file that there was no concern of abuse or neglect.

"In determining whether prosecutorial conduct amounts to a denial of due process, we consider whether the conduct was improper, and, if so, we next determine whether the conduct caused substantial prejudice to the defendant. . . . We do not focus alone, however, on the conduct of the prosecutor. The fairness of the trial and not the culpability of the prosecutor is the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . To make this determination, we must focus on several factors: (1) the extent to which the misconduct was invited by defense conduct or argument; (2) the severity of the conduct; (3) the frequency of the conduct; (4) the centrality of the misconduct to the critical issues of the case; (5) the strength of the curative instructions adopted; and (6) the strength of the state's case." (Citations omitted; internal

quotation marks omitted.) *State* v. *Dillard,* 66 Conn. App. 238, 241, 784 A.2d 387, cert. denied, 258 Conn. 943, 786 A.2d 431 (2001).

We need not determine whether the prosecutor's intemperate remark amounted to an impropriety because we conclude that, even if it did, it did not result in substantial prejudice to the defendant. The test for substantial prejudice is whether the statement "so infected the trial with unfairness as to make the [defendant's] conviction a denial of due process. . . . In other words, we must decide whether the sum total of [the prosecutor's] improprieties rendered the defendant's [trial] fundamentally unfair. . . . The question of whether the defendant has been prejudiced by prosecutorial misconduct . . . depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Internal quotation marks omitted.) *State* v. *Bermudez,* 274 Conn. 581, 599, 876 A.2d 1162 (2005). In this case, the prosecutor's one statement directed at a witness—not the defendant himself—simply did not rise to this level.

Turning to the six factors, the defendant invited, at least to some extent, the prosecutor's statement by asking whether Vega reviewed the victim's "records" rather than just one document. The court acknowledged this possibility as well when it stated to the defendant, "[s]o, would you be better off asking if you reviewed the one document." Next, while the prosecutor clearly should not have made the statement in front of the jury, we are not persuaded that its severity outweighs the other factors. Regarding frequency, the prosecutor only made the statement once. Additionally, the court gave curative instructions advising the jurors to "disregard" the "heated" statement. These instructions were sufficient to alleviate any potential prejudice caused by the statement. See *State* v. *Camacho,* 282 Conn. 328, 385,

924 A.2d 99 ("[i]n the absence of an indication to the contrary, the jury is presumed to have followed [the trial court's] curative instructions" [internal quotation marks omitted]), cert. denied, 522 U.S. 956, 128 S. Ct. 388, 169 L. Ed. 2d 273 (2007). Finally, we note that the state's case was not weak. The victim testified that the defendant sexually abused her during both the charged incident and an uncharged incident, K.B. testified regarding the victim's disclosures of the abuse, Moskal-Kanz testified as to her findings of injury consistent with sexual abuse and the victim's disclosures that the defendant abused her, and R.N. testified regarding the defendant's prior sexual misconduct. In light of the six factors, the prosecutor's statement clearly did not deprive the defendant of a fair trial.

IV

The defendant next claims that the court imposed consecutive sentences stemming from a single incident in violation of the double jeopardy clause of the fifth amendment. This claim is foreclosed by *State* v. *Antwon W.*, 118 Conn. App. 180, 982 A.2d 1112 (2009), cert. denied, 295 Conn. 922, 991 A.2d 568 (2010).

In that case, just as here, the defendant's conviction of sexual assault in the first degree in violation of § 53a-70 (a) (2) and risk of injury to a child in violation of § 53-21 (a) (2) "arose out of the same acts or transactions." Id., 188. This court held, however, that the charged crimes did not constitute the same offense and, therefore, there was no violation of the double jeopardy clause. Id., 191. This court explained that the two crimes contained different elements. Id., 188–91. For instance, § 53a-70 (a) (2) requires proof of sexual intercourse, while § 53-21 (a) (2) does not; § 53a-70 (a) (2) requires that the victim was under thirteen years old, while § 53-21 (a) (2) requires that the victim was under sixteen years old; and § 53-21 (a) (2) requires that the contact

was "in a sexual and indecent manner likely to impair the health or morals," while § 53a-70 (a) (2) has no such requirement. (Internal quotation marks omitted.) Id., 190. We conclude, therefore, that the trial court did not violate the defendant's right against double jeopardy by imposing consecutive sentences. See *State* v. *Alvaro F.*, 291 Conn. 1, 7, 966 A.2d 712 ("[o]ur courts have addressed the relationship between risk of injury to a child and the various degrees of sexual assault in the context of double jeopardy claims on several occasions, each time concluding that the two crimes do not constitute the same offense"), cert. denied, 558 U.S. 882, 130 S. Ct. 200, 175 L. Ed. 2d 140 (2009).

V

The defendant's final claim is that the court improperly refused to conduct an in camera review of the victim's mental health records. Again, we disagree.

The following additional facts are relevant to this claim. On March 3, 2009, the defendant informed the court that subpoenaed material relating to the victim's first videotaped multidisciplinary interview had arrived. The defendant already had a summary report of this interview but not an actual videotape, and, therefore, he subpoenaed the videotape. Although the defendant did not look at the material that was delivered, he apparently was told that it did not include a videotape.

The defendant requested that the court inspect the material to determine whether the defendant could review it so that he could "effectively cross-examine" the victim. In support of this request, the defendant argued that the report concluded that the victim was inconsistent throughout the interview and that it was unclear whether the abuse had in fact occurred. The defendant argued that the court, therefore, should review the material because he met the threshold for demonstrating unreliability. The state responded that,

because the material was privileged, the defendant needed to show a mental condition bearing on the victim's ability to testify accurately in order for the court to be able to inspect the material in camera and that the defendant did not make this showing.

The court agreed with the state and ruled that the defendant did not make "the threshold showing that would even trigger an in camera inspection by the court to review the records. Once again, you have to show the court that there was some mental condition that [the victim] was experiencing that would affect her credibility on the [witness] stand or some type of psychiatric condition that would affect her testimony, and you have made no showing that such a condition exists except for the fact that what she said several years ago was assessed by somebody and that person did not think that was credible testimony."

"We review a court's conclusion that a defendant has failed to make a threshold showing of entitlement to an in camera review of statutorily protected records . . . under the abuse of discretion standard. . . . The trial court's exercise of its discretion will be reversed only where the abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Betances*, 265 Conn. 493, 506, 828 A.2d 1248 (2003).

"It is well settled in this state that before a criminal defendant may obtain an in camera inspection of a witness' confidential records for purposes of impeachment, he or she must first demonstrate that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken." (Internal quotation marks omitted.) *State* v. *Bruno*, 236 Conn. 514, 522–23, 673 A.2d 1117 (1996). "[T]he linchpin of the determination of the

defendant's access to the records is whether they sufficiently disclose material especially probative of the ability to comprehend, know and correctly relate the truth . . . so as to justify breach of their confidentiality and disclosing them to the defendant in order to protect his right of confrontation." (Internal quotation marks omitted.) *State* v. *Slimskey*, 257 Conn. 842, 856–57, 779 A.2d 723 (2001). "Where, as here, the witness' records are sought for the purpose of obtaining evidence of a mental condition bearing on the witness' testimonial capacity, we require the defendant, who is afforded an opportunity to voir dire persons with knowledge of the contents of the records sought, to adduce a factual basis from which the trial court may conclude that there is a reasonable ground to believe that the records will reveal that at any pertinent time [the witness' mental problem] affected his testimonial capacity to a sufficient degree to warrant further inquiry." (Internal quotation marks omitted.) *State* v. *Bruno*, supra, 523.

We agree with the court that the defendant failed to make a threshold showing that the victim had a mental condition affecting her ability to testify truthfully. "In evaluating the sufficiency of the defendant's offer of proof, what is at issue is the existence of a mental problem that may bear on the witness' testimonial capacity, not the witness' general character or intelligence." Id., 526–27. Because the defendant failed to make a threshold showing, we conclude that the court did not abuse its discretion in refusing to conduct an in camera review of this material.

The judgment is affirmed.

In this opinion ALVORD, J., concurred.

MCDONALD, J., concurring. Although I agree with the majority opinion, I write separately because I believe that the uncharged misconduct testimony and

jury instructions gave rise to unfair prejudice, which, being unpreserved, as no exception was taken on these grounds and not the subject of review on appeal or under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), or plain error claims by the defendant, cannot be reviewed in this appeal.

Before the jury, R.N., testified that, as a teenager, she continued to baby-sit for her cousin's children while being crudely sexually abused by the defendant on three occasions because she did not know how to say "no" to her cousin, with whom she was close, after three years of baby-sitting. She also testified at trial that she did not want to break up her cousin's marriage and that "if I honestly had thought that he would have done it to other children—I think I felt that he wouldn't do it." R.N.'s testimony showed that the defendant would take advantage of his wife's young cousin for sexual gratification at the couple's home. From that testimony, the jury could find that the defendant, at the least, exhibited bad character.

In *State* v. *DeJesus,* 288 Conn. 418, 953 A.2d 45 (2008) (en banc), our Supreme Court set forth the conditions for admission into evidence of uncharged propensity evidence. To minimize the risk of undue prejudice, its admission must be "accompanied" by an appropriate cautionary instruction to the jury, referring to footnote 36 of the opinion. Id., 474.[1] The *DeJesus* court lastly

---

[1] In *DeJesus,* our Supreme Court did not set forth the precise content of such a cautionary instruction. Instead, it noted that the following instruction regarding the admission of evidence of uncharged misconduct under rule 413 of the Federal Rules of Evidence had been approved by the United States Court of Appeals for the Tenth Circuit: "In a criminal case in which the defendant is [charged with a crime exhibiting aberrant and compulsive criminal sexual behavior], evidence of the defendant's commission of another offense or offenses . . . is admissible and may be considered for its bearing on any matter to which it is relevant. However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crimes charged in the [information]. Bear in mind as you consider this evidence [that] at all times, the government has the burden of proving that the defendant committed each of the elements of the offense charged in

required that "prior to" admitting the evidence, the trial court must provide the jury with an appropriate cautionary instruction regarding the proper use of such evidence. Id., 477.[2] The *DeJesus* court also referred, in footnote 37, to the cautionary instruction given by the trial judge in *DeJesus*, which minimized the risk of undue prejudice. Id., 475 n.37.[3] That instruction expressly prohibited the jury from using such evidence as evidence of the bad character of the defendant, or as evidence of a tendency to commit criminal acts in general, or as proof that he committed the acts charged in that case. Id. That instruction concluded the evidence was only to be considered "for the sole and limited

the [information]. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the [information]." (Internal quotation marks omitted.) *State* v. *DeJesus*, supra, 288 Conn. 474 n.36.

[2] "[P]rior to admitting evidence of uncharged sexual misconduct under the propensity exception adopted herein, the trial court must provide the jury with an appropriate cautionary instruction regarding the proper use of such evidence. See footnote 36 of this opinion." *State* v. *DeJesus*, supra, 288 Conn. 477.

[3] "The trial court minimized the risk of undue prejudice to the defendant by issuing the following cautionary instruction to the jury: "Remember, I told you that certain evidence might be admitted for one purpose but not another. This evidence has been admitted; first, to demonstrate or show a characteristic method or pattern in the commission of criminal acts; and second, on the issue of the defendant's intent. The evidence of alleged prior misconduct by the defendant . . . is not part of the offense charged in this case. It is for you and you alone . . . to evaluate the testimony in this case, all of the testimony, including this testimony and to determine whether you credit it in whole, in part, or not at all. You are expressly prohibited from using this evidence that you have just heard of prior alleged misconduct as evidence of the bad character of the defendant or as evidence of a tendency to commit criminal acts in general or as proof that he committed the acts charged in this case for which he is being prosecuted. The weight, if any, that you choose to give to this evidence is up to you. That is your job as jurors, to evaluate the evidence.

"If you find this evidence of prior alleged misconduct credible you may consider it for the sole and limited purpose of assisting you in determining whether the defendant has engaged in a characteristic method or pattern in the commission of criminal acts of which the charged conduct is a part and on the issue of the defendant's intent." (Internal quotation marks omitted.) *State* v. *DeJesus*, supra, 288 Conn. 475 n.37.

purpose of assisting [the jury] in determining whether the defendant has engaged in a characteristic method or pattern in the commission of criminal acts of which the charged conduct is a part and on the issue of the defendant's intent." Id.

The record in this case fails to reflect that the trial court gave any cautionary instruction concerning the use of the uncharged sexual misconduct evidence when R.N. testified.[4] See State v. Andersen, 132 Conn. App. 125, 131–36, 135 n.9, 31 A.3d 385 (2011). The only uncharged misconduct instruction given in this case was after the evidence was closed and before the case went to the jury.

The state argued before us that the instruction given to the jury before deliberations minimized any prejudice arising from R.N.'s testimony. As DeJesus pointed out, the admission of the evidence, as in this case, was "for the purpose of showing propensity." (Internal quotation marks omitted.) State v. DeJesus, supra, 288 Conn. 474. However, the state's request to charge did not limit the use of the evidence only to the issue of propensity, upon which it was offered. Instead, the request referred, in brackets, to the evidence of the victim's abuse and that of the teenage baby-sitter.[5] The defendant's request

---

[4] The record also reflects that the trial judge failed to give any cautionary instruction concerning the use of the uncharged sexual misconduct evidence when the victim, K.J., testified.

[5] The state submitted the following request to charge as to uncharged sexual misconduct:

"In a criminal case in which the defendant is charged with a crime exhibiting aberrant and compulsive criminal sexual behavior, evidence of the defendant's commission of another offense or offenses is admissible and may be considered for its bearing on any matter to which it is relevant.[6] However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crimes charged in the information. [In this case, evidence was presented that the defendant had penetrated the vagina of the complainant, [K.J.], with his finger at the family home in Waterbury, and that he had sexually assaulted her in the camper in Thomaston. Additionally, evidence was presented that the defendant had sexual contact with the baby-sitter, [R.N.], at the Waterbury home on three occasions: specifically,

to charge also failed to limit the use of the evidence to the issue of propensity.[6] The court's charge did not limit the use of the evidence to the issue of propensity. It also did not prohibit the use of the evidence to find that the defendant was of bad character or as evidence of a tendency to commit criminal acts in general.[7]

However, the defendant in his appeal did not seek review of the given instruction on appeal, under *State* v. *Golding*, supra, 213 Conn. 233, or as plain error under Practice Book § 60-5.

that the defendant touched [R.N.]'s chest and vagina, and that he penetrated her vagina with his finger.] Bear in mind as you consider this evidence that at all times, the state has the burden of proving that the defendant committed each of the elements of the offense charged in the information. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the information."

[6] "The Supreme Court, in *State* v. *DeJesus,* [supra, 288 Conn. 474 n.36], suggested this instruction, but left open its precise content. The trial court should consider adapting this language to the specific purpose for which the evidence was offered."

[6] The defendant submitted the following request to charge as to uncharged sexual misconduct: "You have also heard testimony in this case about what is called uncharged misconduct. In criminal cases which contain charges such as those in this trial, evidence of a defendant's commission of another offense or offenses may be admissible and may be considered for its bearing on any matter to which it is relevant. However, evidence of a prior offense on its own is not sufficient to prove [the defendant] guilty of the crimes charged in this trial. Bear in mind as you consider this evidence that at all times the [s]tate has the burden of proving beyond a reasonable doubt that [the defendant] committed each of the elements of the offenses charged in this trial. I remind you that [the defendant] is not on trial for any act, conduct or offense not charged in the information for this case."

[7] The court charged the jury with the following instruction just prior to deliberations:

"In a criminal case in which the defendant is charged with a crime exhibiting aberrant or compulsive criminal sexual behavior, evidence of the defendant's commission of another offense or offenses is admissible and may be considered for its bearing on any matter to which it is relevant.

"However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crime—crimes charged in the information. Bear in mind, as you consider this evidence, that at all times, the State has the burden of proving that the defendant committed each of the elements of the offense charged in the information. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the information."

The state argued before us that the admission of R.N.'s evidence was harmless because of the other evidence against the defendant and because the court's instruction was based directly on language in *DeJesus*. I do not agree because *DeJesus* clearly and repeatedly set forth the timing and requirements of a cautionary instruction. Here, the unfair prejudice was not minimized but any review must await, because of defense counsel's actions, review by habeas corpus if undertaken for ineffective assistance of counsel. See *State* v. *Kitchens*, 299 Conn. 447, 496–98, 10 A.3d 942 (2011) (identifying benefits and availability of habeas review for claims of ineffective assistance of counsel based on waiver of an improper jury instruction).[8]

Accordingly, I respectfully concur.

---

[8] The same conduct by trial counsel and appellate counsel also pertains to uncharged misconduct evidence from K.J. as to the defendant's lustful disposition toward her, the kindergarten victim, in this case. For a contrast, see *State* v. *Andersen*, supra, 132 Conn. App. 131–36, 135 n.9.